IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT IN AND
FOR DUVAL COUNTY, FLORIDA

CASE NO.
16- 2010-CA-008965         -XXXX-MÁ

Class Representation

**DIVISION CV-C**

3: 10-cv-845-J-12 mGR

BOARD OF TRUSTEES OF THE
CITY OF LAKE WORTH EMPLOYEES'
RETIREMENT SYSTEM; BOARD OF
TRUSTEES OF THE CITY OF LAKE
WORTH POLICE OFFICERS' RETIREMENT
SYSTEM; BOARD OF TRUSTEES OF THE
CITY OF LAKE WORTH FIREFIGHTERS'
PENSION TRUST FUND; BOARD OF
TRUSTEES OF THE CITY OF POMPANO
BEACH GENERAL EMPLOYEES RETIREMENT
SYSTEM; on behalf of themselves and all others
Similarly situated,



Plaintiffs,

v.

MERRILL LYNCH PIERCE FENNER
& SMITH, INCORPORATED, a wholly
owned subsidary of THE BANK OF
AMERICA,

Defendant.

FILED

JUL 16 2010

CLERK CIRCUIT COURT



THIS INSTRUMENT
IN COMPUTER
R. W.

_____/

Plaintiffs bring this action on behalf of themselves and all others similarly situated

against Defendant Merrill Lynch Pierce Fenner Smith, Inc. ("Merrill" or "Merrill Lynch")

and state:

**INTRODUCTION**

This is a class action lawsuit on behalf of Florida public employee retirement

systems against Merrill for breach of fiduciary responsibility. For many years, ending in

or around June 2008, Merrill served as investment consultant to a large number of

Florida retirement plans maintained by municipalities for the benefit of their firefighters,

police officers and other public workers. As is more fully explained below, Merrill

breached its fiduciary duties to those retirement plans; Merrill failed to provide the services it owed them and placed its own economic interests ahead of the interests of the retirement plans to which Merrill served in a fiduciary capacity.    Merrill Lynch improperly benefited when it used its authority and influence in connection with the retirement plans in its own interest, in violation of its fiduciary responsibilities.    Merrill Lynch's breach of its fiduciary duties to the retirement plans also caused harm to the plans and the plans' financial ability to provide benefits to public employees.

## PARTIES, JURISDICTION AND VENUE

1.    This is an action for damages and equitable relief in excess of the jurisdictional threshold of this Court.

2.    Plaintiffs are the respective boards of trustees of governmental, defined benefit retirement plans organized under the laws of Florida.  Plaintiffs bring this action under the authority of F.S.A. §112.66(6) on behalf of the retirement plans for which they act as administrators, seeking relief for the benefit of such plans ("Retirement Plans").  Plaintiffs bring this action as a class action on behalf of themselves and all other similarly situated boards of trustees or administrators of governmental defined benefit retirement plans in the state of Florida.

3.    The Board of Trustees of the City of Lake Worth Employees Retirement System acts as the administrator of the pension plan for covered City of Lake Worth full time emloyees and as trustees of the trust fund that holds the Retirement System's assets.

4.     The Board of Trustees of the City of Lake Worth Police Retirement System acts as the administrator of the pension plan for covered City of Lake Worth police

officers and as trustees of the trust fund that holds the Retirement System's assets.

5. The Board of Trustees of the City of Lake Worth Firefighters Pension Trust Fund acts as the administrator of the pension plan for covered City of Lake Worth firefighters and as trustees of the trust fund that holds the Pension Trust Fund's assets.

6. The Board of Trustees of the City of Pompano Beach General Employees' Retirement System acts as the administrator of the pension plan for covered City of Pompano Beach full time employees and as trustees of the trust fund that holds the Retirement System's assets.

7. Defendant Merrill is a Delaware corporation wholly owned by Bank of America, which at all relevant times did business in the State of Florida as Merrill Lynch Consulting Services. Merrill is subject to the laws of the State of Florida.

8. Venue is proper in Duval County as all actions at issue in this case took place in whole or in part in the Merrill Lynch Consulting Services' offices maintained in Duval County, Florida.

## CLASS REPRESENTATION ALLEGATIONS

9. This action is properly maintained as a class action under Rule 1.220 of the Florida Rules of Civil Procedure on behalf of a Class consisting of the boards of trustees or administrators of governmental defined benefit retirement plans organized under Florida law for which Merrill Lynch served as an investment consultant during the during the period from July 2000 until Merrill Lynch stopped providing services upon the closing of Merrill's Florida consulting operations in or

around June 2008 (the "Class Period").

10. There are approximately 100 retirement plans for which Merrill Lynch served as an investment consultant during the Class Period. Accordingly, the members of the Class are so numerous that separate joinder of each member is impractical.

11. The claims and defenses of the representative parties raise questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the Class. The following common questions of law or fact are presented:

   a. Whether Merrill Lynch acted in a fiduciary capacity in providing services to the Retirement Plans and the Class;

   b. Whether Merrill Lynch breached its fiduciary duties to the Retirement Plans and the Class by failing to provide the services it owed them, and/or by acting in its own interests and failing to act in the interests of the Retirement Plans and the Class in providing such services;

   c. Whether Merrill Lynch had conflicts of interest in connection with the services it provided to the Retirement Plans and the Class; and

   d. Whether Merrill Lynch received direct or indirect compensation or other value from any source other than the Retirement Plans and the Class in connection with services provided to the Retirement Plans and the Class.

12. The claims of the Retirement Plans are typical of the claims of each member of the Class in that Merrill's pattern of conduct was consistent with regard to all members of the Class.

-4-

13.   The Retirement Plans can fairly and adequately protect and represent the interests of each member of the Class because there is an identity of interest between the Retirement Plans and the Class and the Retirement Plans lack any disqualifying adverse interest. Based on their substantial experience in the management of public employee retirement plans, the boards of trustees of the Retirement Plans are likely to vigorously litigate the claim and have retained attorneys experienced in pension and fiduciary law matters.

14.   This action is properly maintained under section (b) (1) or (2) of Rule 1.220 of the Florida Rules of Civil Procedure on behalf of a class consisting of the boards of trustees or administrators of governmental defined benefit retirement plans organized under Florida law for which Merrill Lynch served as an investment consultant during the during the Class Period.

15.   The prosecution of separate claims by individual members of the Class would create a risk of inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class and would be contrary to the uniform standard of fiduciary behavior embodied in Florida law.

16.   The prosecution of separate claims by individual members of the Class would also create a risk that adjudications concerning individual members of the Class would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests.

17. The party opposing the Class has acted or refused to act on grounds generally applicable to all the members of the Class thereby making a final judgment concerning the Class as a whole appropriate.

18. This action is also properly maintained under section (b) (3) of Rule 1.220 of the Florida Rules of Civil Procedure. The questions of law or fact common to the claims of the Retirement Plans and Class predominate over any questions of law or fact affecting only individual members of the Class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.

19. Consideration of all relevant facts and circumstances demonstrates that the claims brought by the Retirement Plans are based on conduct by Merrill Lynch that was common to the entire Class, so that addressing the claims in the forum where Merrill Lynch was based Is superior to adjudicating different actions in different forums and will lead to efficient management of the claims asserted.

## FLORIDA'S PUBLIC RETIREMENT PLANS

20. The State of Florida has more than 400 municipalities. These municipalities are employers of public employees, and many sponsor employee pension benefit plans to provide retirement income for their employees. The Florida Protection of Public Employee Retirement Benefits Act ("Retirement Benefits Act"), F.S.A. §112.60, *et seq.*, applies to any and all units, agencies, branches, departments, boards, and institutions of state, county, special district, and municipal governments which participate in, operate, or administer a retirement system or plan for public employees, funded in whole or in part by public funds. F.S.A.

-6-

§112.62.

21.   The boards of trustees of retirement plans in the State of Florida must ensure
that their retirement plans are operated within the requirements of the Retirement
Benefits Act.

22.   The Retirement Benefits Act, which is modeled on the federal Employee
Retirement Income Security Act ("ERISA"), 29 U.S.C. §1100 *et seq.*, sets forth
standards and requirements to ensure that such retirement plans "be managed,
administered, operated, and funded in such a manner as to maximize the
protection of public employee retirement benefits." F.S.A. §112.61.

23.   Section 112.661 of the Retirement Benefits Act, titled "Investment Policies,"
requires a written Investment Policy ("IP") for the investment of public employee
pension benefit plan assets. The written IP must follow objective standards set
forth in Section 112.661, including standards describing the types and
characteristics of investments. The statute also describes applicable fiduciary
standards, adopting the standard of care applicable to a fiduciary under ERISA.

24.   Moreover, Chapters 175 and 185 of the Florida Statutes provide additional
"minimum benefits and minimum standards for the operation and funding" of
pension trust funds for firefighter and police pension plans, respectively. F.S.A.
§§175.021, 185.01. These provisions require that the boards of trustees of
police and firefighter pension plans hire a qualified independent consultant (an
"Independent Consultant") at least once every three years to evaluate the
performance of the plan's money managers and make recommendations
regarding the selection of money managers. F.S.A. §§175.071(6)(a),

-7-

185.06(5)(a).   The statutes describe the minimum qualifications of such Independent Consultant, including that the Independent Consultant provide services on a flat fee basis, and not be associated in any way with a money manager for the pension plan. Id.

25.   Boards of trustees of retirement plans for municipal workers other than police officers or firefighters are required by Section 112.661 of the Florida Statutes, by the Retirement Benefits Act, by their own municipal ordinance codes, and by the common law of Florida to operate in a fashion comparable to the firefighter and police pension funds governed by Chapters 175 and 185.

## MERRILL LYNCH'S OFFICES IN JACKSONVILLE AND PONTE VEDRA, FLORIDA

26.   Merrill Lynch operated an office at various times in Jacksonville, Florida and Ponte Vedra, Florida dedicated to providing investment consultant services to governmental retirement systems or plans operated under the requirements of the Retirement Benefits Act.

27.   Merrill Lynch sought to provide services as a qualified Independent Consultant that provided services consistent with the requirements of the Retirement Benefits Act, and of Chapters 175 and 185 of the Florida Statutes, for firefighter, municipal police, and municipal employee pension plans, as discussed above.

## MERRILL LYNCH AS INDEPENDENT INVESTMENT CONSULTANT

28.   The boards of trustees of governmental pension benefit plans in Florida are authorized to hire professionals such as Merrill Lynch in fulfilling their obligations to the plans, including hiring Merrill as an Independent Consultant.

29.   The boards of trustees of the Retirement Plans and the Class hired Merrill Lynch,

pursuant to the authority granted them by state law, to act as an Independent Consultant in connection with investing retirement plan assets.

30. The Retirement Plans and the Class hired Merrill Lynch based on Merrill Lynch's qualifications and experience; the services Merrill offered to provide; its method of compensation; and its status and reputation as an Independent Consultant.

31. Merrill Lynch sought and created a relationship of trust and confidence with the boards of trustees of the Retirement Plans and the Class, in which the trustees placed their confidence and trust in Merrill Lynch to counsel and inform them and assist them in operating the plans in compliance with the requirements of the Retirement Benefits Act and Chapters 175 and 185 of the Florida Statutes.

32. Merrill Lynch provided services to the Retirement Plans and the Class in its capacity as an Independent Consultant within the relationship of trust and confidence that Merrill had created.

### MERRILL LYNCH'S SERVICES

33. Merrill Lynch was hired to provide the following services to the Retirement Plans and the Class in its capacity as an Independent Consultant:

    a. Develop a customized written Investment Policy for each Retirement Plan and Class member in accordance with the requirements of Chapter 112.661 of the Florida Statutes;

    b. Structure individually appropriate asset allocation guidelines for each Retirement Plan and Class member, based on the unique characteristics of the investment portfolio of each;

c.     Perform searches for professional money managers ("money managers" or "investment managers") and conduct due diligence on such money managers to determine whether such investment managers were qualified to invest the assets of the Retirement Plans and the Class;

d.     Monitor the performance of money managers hired to invest the assets of the Retirement Plans and the Class;

e.     Monitor the investment performance of the investment portfolio of each Retirement Plan and Class member;

f.     Identify which investment managers should be replaced or retained on the basis of Merrill Lynch's research and analysis, the particularized needs of each Retirement Plan and Class member, and the performance of the investment managers; and

g.     Identify circumstances under which the use of financial industry services, including transition manager services and directed brokerage services, would benefit the Retirement Plans and the Class.

34.     Merrill Lynch agreed to be compensated for its services to the Retirement Plans and the Class on a flat fee basis, consistent with the requirements of Florida law.

35.     Merrill Lynch was required, as a fiduciary to the the Retirement Plans and the Class, to perform all services for the Retirement Plans and the Class in the best interests of the Retirement Plans and the Class, and to avoid all conflicts of interests.

36.     The Retirement Plans and the Class were not aware that, in violation of its fiduciary duty, Merrill did not act in the best interests of the Retirement Plans and

-10-

the Class; rather Merrill Lynch had conflicts of interest and acted in its own interest for its own benefit in providing services to the Retirement Plans and the Class.

## MERRILL LYNCH'S DUTIES TO THE RETIREMENT PLANS AND THE CLASS

### A. INVESTMENT POLICY DEVELOPMENT

37.   Merrill Lynch had a duty to develop an Investment Policy for each of the Retirement Plans and each member of the Class. Every Investment Policy had to be consistent with the requirements of Chapter 112.661 of the Florida Statutes and had to meet the needs of each of Merrill's clients based on the unique characteristics of that client, including each client's risk tolerance, overall investment portfolio and participant demographics. The Retirement Plans and the Class paid Merrill Lynch for the service of developing customized investment policies.

38.   In violation of its duty, Merrill Lynch did not develop an Investment Policy customized for each Retirement Plan and Class member based on the needs and characteristics of each.

39.   The Retirement Plans and the Class were harmed by Merrill Lynch's breach of its duty to develop customized Investment Policies.

### B. ASSET ALLOCATION GUIDELINES

40.   Merrill Lynch had a duty to develop asset allocation guidelines for for each of the Retirement Plans and each member of the Class. Such guidelines had to be consistent with the requirements of Chapter 112.661 of the Florida Statutes and had to meet the needs of each of Merrill's client's based on the unique

-11-

characteristics of each client, including each client's risk tolerance, overall investment portfolio and participant demographics. The Retirement Plans and the Class paid Merrill Lynch for the service of developing customized asset allocation guidelines.

41.   In violation of its duty, Merrill Lynch did not develop asset allocation guidelines customized for each Retirement Plan and Class member based on the needs and characteristics of each.

42.   The Retirement Plans and the Class were harmed by Merrill Lynch's breach of its duty to develop customized asset allocation guidelines.

### C. MONEY MANAGER SEARCHES

43.   Merrill Lynch had a duty to conduct customized searches for professional money managers to manage the investment of the assets of the Retirement Plans and the Class using Merrill Lynch's institutional resources, including using research and materials developed by a Merrill Lynch office in New Jersey for vetting potential money managers and conducting due diligence. Such searches were to be based on the needs and characteristics of each Retirement Plan and Class member.

44.   The Retirement Plans and Class paid Merrill Lynch for the service of conducting customized money manager searches and using all available Merrill Lynch resources.

45.   Merrill Lynch did not conduct customized money manager searches and did not use the services of the Merrill Lynch New Jersey office in connection with all money manager searches performed on behalf of the Retirement Plans and the

members of the Class. Instead, in violation of its duty, Merrill Lynch selected money managers for the Retirement Plans and the Class from a short list of money managers for each asset class that Merrill Lynch created and maintained in its Florida office.

46. Merrill Lynch acted in its own interest when selecting and promoting money managers to invest the assets of the Retirement Plans and the Class, failed to act solely for the benefit of the Retirement Plans and the Class as required, and benefited from its actions and inactions.

47. The Retirement Plans and the Class were harmed by Merrill Lynch's breach of its duty to conduct customized money manager searches, and by Merrill's failure to act solely in the interest of the Retirement Plans and the Class.

## D. ASSOCIATIONS WITH MONEY MANAGERS

48. In order to qualify as an Independent Consultant under Florida law, Merrill Lynch could not be associated in any manner with the money managers for the Retirement Plans and the Class.

49. In violation of that requirement and of its fiduciary duty, Merrill Lynch had associations with money managers that it identified as qualified investment managers to invest public pension plan assets for the Retirement Plans and the members of the Class.

50. Merrill Lynch acted in its own interest by maintaining associations with money managers for the Retirement Plans and the Class while contemporaneously serving as an Independendent Consultant to the Retirement Plans and the Class in violation of Florida law and its fiduciary duties.

51.   Merrill Lynch acted in its own interest and in violation of Florida law and its fiduciary duties when it received and retained for itself direct or indirect benefits, either through monetary compensation or through other means of receiving value, from sources other than the Retirement Plans and the members of the Class or their boards of trustees in connection with the money manager search and selection services it provided to the Retirement Plans and the Class.

52.   The Retirement Plans and the Class were harmed as a result of Merrill Lynch's breach of its fiduciary duty to the Retirement Plans and the Class by serving as an Independent Consultant to them while simultaneoulsy maintaining associations with money managers and receiving benefits from sources other than the Retirement Plans and the Class in connection wth the services provided.

E.   MONITORING INVESTMENT MANAGERS

53.   Merrill Lynch had a duty to monitor, review and analyze the investment performance of the investment managers of the Retirement Plans and the Class, and to identify managers that should be replaced or retained based on their performance and the needs of each Retirement Plan and Class member.

54.   The Retirement Plans and the Class paid Merrill Lynch for the service of monitoring, reviewing and analyzing money manager performance and identifying money managers that should be replaced or retained.

55.   In violation of its duty, Merrill Lynch failed to monitor and analyze the performance of money managers, and used factors other than each money manager's investment performance and the needs of each Retirement Plan and Class member in identifying money mangers that should be replaced or retained.

-14-

56.   Further, Merrill Lynch acted in its own interest when identifying money managers to replace or retain to invest the assets of the Retirement Plans and the Class, and not in the sole interest of the Retirement Plans and the Class as it was required to do.

57.   Merrill Lynch acted in its own interest and for its own benefit when it received and retained for itself direct or indirect benefits, either through monetary compensation or through other means of receiving value, from sources other than the Retirement Plans and the Class in connection with its identification of money managers to be replaced or retained by the Retirement Plans and the Class.

58.   The Retirement Plans and the Class were harmed by Merrill Lynch's breach of its duty to monitor the performance of money managers, and by Merrill's receipt of compensation or other value from sources other than the Retirement Plans and the Class.

## F.  EVALUATION OF TRANSITION MANAGERS

59.   Merrill Lynch had a duty to evaluate and identify situations in which the Retirement Plans and the Class would benefit from the use of transition managers to facilitate the cost efficient transfer of assets from one investment manager to another.

60.   Merrill Lynch acted in its own interest in evaluating circumstances in which the Retirement Plans and the Class could use transition managers, and not in the sole interest of the Retirement Plans and the Class as it was required to do, in violation of its duty to the Retirment Plans and the Class.

-15-

61.    Merrill Lynch improperly, and for its own benefit, promoted the use of Merrill Lynch affiliates as transition managers for the Retirement Plans and the Class, which generated additional compensation for Merrill Lynch. In violation of its duty, Merrill Lynch received direct or indirect benefits from sources other than the Retirement Plans and the Class, either through monetary compensation or through other means of receiving value, in connection with promoting and placing its affiliates as transition managers for the Retirement Plans and the Class.

62.    Merrill Lynch used the assets of the Retirement Plans and the Class for its own benefit and to establish its own compensation by promoting its affiliates as transition managers for the Retirement Plans and the Class.

63.    The Retirement Plans and the Class were harmed by Merrill Lynch's breach of its duty to evaluate the use of transition managers for the sole benefit of the Retirement Plans and the Class.

### G.  DIRECTED BROKERAGE SERVICES

64.    Merrill Lynch had a duty to evaluate situations in which the Retirement Plans and the Class would benefit from the use of directed brokerage services.

65.    Merrill Lynch acted in its own interest by promoting its affiliates to provide directed brokerage services for the Retirement Plans and the Class, and not in the sole interest of the Retirement Plans and the Class as it was required to do, in violation of its duty to the Retirment Plans and the Class..

66.    Merrill Lynch improperly, and for its own benefit, promoted the use of Merrill Lynch affiliates to provide directed brokerage services for the Retirement Plans and the Class, which generated additional compensation for Merrill Lynch. In

-16-

violation of its duty, Merrill Lynch received direct or indirect benefits from sources other than the Retirement Plans and the Class, either through monetary compensation or through other means of receiving value, in connection with promoting and placing its affiliates to provide directed brokerage services for the Retirement Plans and the Class.

67.     Merrill Lynch used the assets of the Retirement Plans and the Class for its own benefit and to establish its own compensation by promoting its affiliates to provide directed brokerage services for the Retirement Plans and the Class.

68.     The Retirement Plans and the Class were harmed by Merrill Lynch's breach of its duty to evaluate the use of directed brokerage services for the sole benefit of the Retirement Plans and the Class.

## MERRILL LYNCH'S RETREAT

69.     In January 2007 Merrill Lynch sent letters to the boards of trustees of various public pension plans in Florida stating that an audit of its billing practices for consulting services reflected errors in calculating fees.  Merrill Lynch provided checks that purpurtedly reimbursed its clients for these errors.

70.     Merrill Lynch did not provide information describing or calculating the amounts attributable to the errors in billing or the reimbursement of fees.  The boards of trustees lacked sufficient information to determine the basis of Merrill Lynch's payments.

71.     In or around mid June 2008 Merrill Lynch announced that it would no longer provide investment consultant services to Florida governmental pension plans. Merrill notified all of the governmental plans to which it was providing services

-17-

that it was terminating its relationship with all Florida governmental pension benefit plans.   Merrill Lynch subsequently stopped providing investment consultant services to the Retirement Plans and the members of the Class.

72.   On January 30, 2009, the SEC issued an order instituting administrative proceedings against Merrill Lynch after Merrill Lynch submitted an offer of settlement.  The SEC found that Merrill Lynch breached fiduciary duties owed to its clients under federal securities law. The order made findings and imposed remedial sanctions and a cease and desist order as to Merrill Lynch.  As a result of the order, Merrill Lynch was censured, and ordered to pay a civil money penalty in the amount of $1 million to the United States Treasury.

73.   Prior to the resolution of the SEC action and prior to Merrill Lynch's retreat from the Florida market  Merrill Lynch lulled the Retirement Plans and the Class into a false sense of security and discouraged the Retirement Plans and the Class from pursuing the causes of action asserted herein.

## BREACH OF FIDUCIARY DUTY CLAIM

74.   Merrill Lynch acted as a fiduciary to the Retirement Plans and the Class in its role as an Independent Consultant.  By virtue of its actions and inactions as described above, Merrill Lynch had a fiduciary obligation to perform services for the Retirement Plans and the Class in their best interest and for the purpose of protecting and increasing the value of retirement plan assets.

75.   By virtue of its actions and inactions as described above, Merrill Lynch breached its fiduciary duties to the Retirement Plans and the Class when it failed to act in the interests of the Retirement Plans and/or acted in its own interest by:

-18-

a. failing to perform services for the Retirement Plans and the Class within the requirements of the Retirement Benefits Act;

b. failing to perform services for the Retirement Plans and the Class in the interests of and for the benefit of the Retirement Plans and the Class;

c. abusing its position of trust and confidence with the Retirement Plans and the Class;

d. using the assets of the Retirement Plans and the Class and using its business providing services to the Retirement Plans and the Class in its own interest to increase its own compensation and profit through direct and indirect means;

e. creating circumstances under which Merrill Lynch received monetary compensation or other value from third parties in connection with the services it provided to the Retirement Plans and the Class;

f. accepting direct or indirect compensation or other value from third parties in connection with the services it provided to the Retirement Plans and the Class;

g. using the assets of the Retirement Plans and the Class for its own benefit;

h. receiving compensation in connection with services provided to the Retirement Plans and the Class that was not based on a flat fee as required by Florida law; and

               i.  receiving unauthorized compensation based on the services it provided to the Retirement Plans and the Class.

76.    The Retirement Plans and the Class were harmed and suffered losses as a result of Merrill Lynch's breaches of its fiduciary duties.

77.    Merrill Lynch improperly benefited when it received and retained unauthorized compensation or other direct or indirect benefit or value in connection with its breach of fiduciary duties to the Retirement Plans and the members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of the Retirement Plans and the Class, demand judgment as follows:

1.    A determination that this action is a proper class action maintainable under Rule 1.220 of the Florida Rules of Civil Procedure;

2.    A declaration that Merrill Lynch has breached its fudicary duties to the Retirement Plans and the Class;

3.    An order awarding the Retirement Plans and the Class an appropriate measure of damages to be determined at trial;

4.    An order requiring Merrill Lynch to disgorge all benefits, compensation or other value it received in connection with its breach of fiduciary duties, to be determined at trial;

5.    An order awarding attorney fees and costs pursuant to the common fund doctrine and other applicable law;

6.    An order granting such other and further relief that the Court deems just and fair.

Plaintiffs demand a trial by jury.

Dated this 15th day of July, 2010.

Respectfully submitted,

SUGARMAN & SUSSKIND, P.A.
Co-Counsel for Lead Plaintiffs
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
Telephone: (305) 592-2801
Facsimile: (305) 447-8115

By:_____
ROBERT A. SUGARMAN
Fla. Bar No. 149388

By:_____
IVELISSE BERIO LEBEAU
Fla. Bar No. 0907693

KLAUSNER & KAUFMAN, P.A.
Co-Counsel for Lead Plaintiffs
10059 N.W. 1st Court
Plantation, FL 33324
Telephone: (954) 916-1202
Facsimile: (954) 916-1232

By:_____
ROBERT D. KLAUSNER
Fla. Bar No. 244082

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP
Co-Counsel for Lead Plaintiffs
Gerald H. Silk
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Tel: 212-554-1400
Fax: 212-554-1444

-21-