UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE CITY OF LAKE WORTH EMPLOYEES' RETIREMENT SYSTEM; BOARD OF TRUSTEES OF THE CITY OF LAKE WORTH POLICE OFFICERS' RETIREMENT SYSTEM; BOARD OF TRUSTEES OF THE CITY OF LAKE WORTH FIREFIGHTERS' PENSION TRUST FUND; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a Delaware corporation,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: 3:10-cv-845-TJC-MCR |

**PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT, AND (III) APPROVAL OF NOTICE TO THE CLASS AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

MOTION ...................................................................................................1

MEMORANDUM OF LAW .......................................................................2

    I.     INTRODUCTION .............................................................2

    II.    BACKGROUND OF THE LITIGATION.................................5

    III.   THE SETTLEMENT WARRANTS PRELIMINARY
           APPROVAL ....................................................................9

           A.    The Settlement Is The Result Of Good Faith,
                  Arm's-Length Negotiations By Well-Informed And
                  Experienced Counsel ....................................................12

           B.    The Substantial Benefits For The Class, Weighed
                  Against Litigation Risks, Supports Preliminary
                  Approval ......................................................................14

           C.    The Stage Of The Proceedings Supports
                    Preliminary Approval...................................................14

    IV.   NOTICE TO THE CLASS SHOULD BE APPROVED...........16

    V.    PROPOSED SCHEDULE OF EVENTS.................................16

    VI.   THE CLASS SHOULD BE CERTIFIED FOR
           SETTLEMENT PURPOSES ...................................................17

    VII.  CONCLUSION.........................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997)................................................................................................19

*Bennett v. Behring Corp.,*
   737 F.2d 982 (11th Cir. 1984) ..............................................................................11

*Board of Trustees of the City of Lake Worth Employees Retirement System, et al.,*
   *v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
   Case No.: 3:10-cv-845-TJC-MCR (M.D. Fla. filed Sept. 15, 2010) ............................... passim

*Board of Trustees of the City of Lake Worth Employees Retirement System, et al.,*
   *v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
   No. 16-2010-CA-008965 (Fla. 4th Cir. Ct. 2010) ....................................................5

*Borcea v. Carnival Corp.,*
   238 F.R.D. 664 (S.D. Fla. 2006)............................................................................19

*City Partnership Co. v. Atlantic Acquisition Ltd. Partnership,*
   100 F.3d 1041 (1st Cir. 1996)...............................................................................12

*Faught v. American Home Shield Corp,*
   661 F.3d 1040 (11th Cir. 2011) ............................................................................11

*Fresco v. Auto Data Direct, Inc.,*
   No. 03-61063-CIV., 2007 WL 2330895 (S.D. Fla. May 14, 2007)........................10

*In re Checking Account Overdraft Litig.,*
   No. 09-MD-02036-JLK, 2011 WL 5873389 (S.D. Fla. Nov. 22, 2011) .........................12, 16

*In re Checking Account Overdraft Litig.,*
   275 F.R.D 654 (S.D. Fla. 2011)..............................................................................18

*In re Chicken Antitrust Litig. American Poultry,*
   669 F.2d 228 (5th Cir. 1982) ................................................................................10

*In re Heritage Bond Litig.,*
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................12

*In re OCA, Inc. Securities & Derivative Litig.,*
   No. 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ...................................10

*In re Painewebber Ltd. Partnerships Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................13

*In re United States Oil & Gas Litig.,*
   967 F.2d 489 (11th Cir. 1992) ...........................................................................9

*In re Winn-Dixie Stores, Inc. ERISA Litig.,*
   No. 3:04-cv-194-J-33MCR, 2008 WL 815724 (M.D. Fla. Mar. 20, 2008) ...........................11

*Perez v. Asurion Corp.,*
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................13

*Smith v. Wm. Wrigley Jr. Co.,*
   No. 09-60646-CIV., 2010 WL 2401149 (S.D. Fla. June 15, 2010)...........................10, 11, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005)...............................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23................................................................................... passim

M.D. Fla. R. 3.01(g).....................................................................................2

*Manual for Complex Litigation* § 21.63 (4th ed. 2009).................................................10

## MOTION

Plaintiffs, the respective Boards of Trustees of the City of Lake Worth Employees' Retirement System ("Lake Worth General Employees"), the City of Lake Worth Police Officers' Retirement System ("Lake Worth Police"), and the City of Lake Worth Firefighters' Pension Trust Fund ("Lake Worth Firefighters") (collectively, the "Plaintiff Plans"), on behalf of the Plaintiff Plans and the Class, respectfully move the Court for an order (i) preliminarily approving the proposed settlement of this class action litigation (the "Action") as set forth in the Stipulation and Agreement of Settlement dated March 23, 2012 (the "Stipulation" or "Stip.") entered into with Defendant Merrill Lynch Pierce Fenner & Smith Inc. ("Defendant" or "Merrill Lynch");[1] (ii) certification of the Class and of the Plaintiff Plans as Class Representatives and appointment of Plaintiffs' Counsel as Class Counsel for purposes of the Settlement;[2] (iii) approval of the form and

---

[1]  The Stipulation is attached as Exhibit 1 to the Declaration of Adam P. Levinson (the "Levinson Declaration") submitted herewith.  Unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation.

[2]  As part of the Settlement, the Parties have stipulated and agreed to certification of the Action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Class,  defined as all Plans for which Merrill Lynch and Merrill Lynch Financial Advisor Michael Callaway or any other member of the Callaway Team provided Consulting Services during the Class Period (July 1, 2000, through and including June 30, 2008), or any portion thereof, but excluding all such Plans that had brought separate arbitration or litigation proceedings against Merrill Lynch or any member of the Callaway Team on or before December 14, 2011, as listed on Schedule 1 to the Stipulation.  Also excluded from the Class are any Plans that exclude themselves by filing a valid request for exclusion in accordance with the requirements set forth in the Notice.  The universe of Plans included in the Class (subject to any Class Members' right to file a valid request for exclusion as set forth in the Stipulation) is set forth on Schedule 2 to the Stipulation.

manner of giving notice of the proposed Settlement to the Class Members; and (iv) scheduling a hearing on final approval of the Settlement and Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses. The instant Motion is supported by the following Memorandum of Law and the Levinson Declaration submitted herewith.

Plaintiffs' Counsel, Klausner, Kaufman, Jensen & Levinson, P.A., Bernstein Litowitz Berger & Grossmann LLP, and Sugarman & Susskind, P.A., certify pursuant to Local Rule 3.01(g) that they have conferred with counsel for Defendant and that Defendant does not oppose this Motion. Plaintiffs are not aware of any opposition to this Motion.

## **MEMORANDUM OF LAW**

## I.   **INTRODUCTION**

Plaintiffs have reached an agreement with Defendant to settle this Action for $8,500,000 in cash in return for the dismissal and release of all claims asserted in the Action against Defendant.[3]   If approved by the Court, the Settlement will completely resolve the Action.

Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement represents an excellent result and is in the best interests of the Class. The Settlement provides the Class with a substantial and immediate monetary benefit in the form of an $8,500,000

---

[3]   In addition to the $8,500,000 settlement payment, Defendant has agreed to deposit $1,000 into escrow to be applied to the costs of providing notice of the Settlement to the Class.

cash payment.  This significant benefit must be considered in the context of the serious risks that further protracted and contested litigation might lead to no recovery, or to a smaller recovery, from the Defendant in this Action.  As further detailed below, Plaintiffs and Plaintiffs' Counsel recognized that this Action presented substantial risks in establishing the liability of Defendant and damages to the Class, including challenges in overcoming Defendant's argument that Plaintiffs' claims for breach of fiduciary duty are barred by the "economic loss rule" under Florida law and other defenses that Defendant would likely have asserted to establish that it was protected from liability to the Class.  In light of the risks of continued litigation, Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class.

Moreover, the Settlement was reached only after the Parties had engaged in a mediation process presided over by Judge Herbert Stettin (ret.) and at a time when the Parties understood the strengths and weaknesses of their respective positions in the litigation.  Indeed, by the time the Settlement was reached, Plaintiffs' Counsel had (1) conducted an extensive factual investigation and thoroughly researched the applicable law with respect to the claims asserted against Defendant and the potential defenses thereto, (2) successfully opposed Defendant's motion to dismiss the Complaint, (3) filed their comprehensive motion papers in support of class certification, and (4) conducted extensive fact discovery, which included, among other things, the review of over two million pages of documents and the taking or defending of a half-dozen depositions.  The Parties' respective presentations concerning liability and damages at the mediation

session also provided Plaintiffs with a further basis upon which to assess the relative strengths and weaknesses of their position and Defendant's position in the Action.

At the final settlement hearing ("Settlement Hearing"), the Court will have before it more detailed motion papers submitted in support of the proposed Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable and adequate.  At this time, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Specifically, Plaintiffs request that this Court enter the [Proposed] Order Preliminarily Approving Proposed Settlement and Providing for Notice (the "Preliminary Approval Order"), attached as Exhibit A to the Stipulation, which, among other things, will:

(i)     Preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)    Approve the form and content of the Notice, Claim Form and Summary Notice attached, respectively, as Exhibits 1, 2 and 3 to the Preliminary Approval Order;

(iii)   Find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules; and

(iv)    Schedule the Settlement Hearing and set out a schedule and procedures for:  disseminating the Notice and Claim Form and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the proposed Plan of Allocation, and/or Plaintiff's Counsel's motion for attorneys' fees and reimbursement of litigation expenses; submitting papers in support of final approval of the Settlement; and

submitting a Claim Form to share in the distribution of the Net Settlement Fund.[4]

Plaintiffs also request, for purposes of the Settlement only, certification of the Class, certification of the Plaintiff Plans as Class Representatives, and appointment of Plaintiffs' Counsel as Class Counsel under Rule 23 of the Federal Rules of Civil Procedure.

## II.    BACKGROUND OF THE LITIGATION

On or about July 15, 2010, Plaintiffs filed a putative class action against Merrill Lynch, captioned *Board of Trustees of the City of Lake Worth Employees Retirement System, et al., v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 16-2010-CA-008965, in the Circuit Court of the Fourth Circuit in and for Duval County, Florida (the "Florida State Court Action").

The class action complaint (the "Complaint") filed by Plaintiffs alleged that Merrill Lynch breached its fiduciary duties to the Plaintiff Plans and to all other Florida public employee retirement benefit plans for which Merrill Lynch and Merrill Lynch

---

[4]  Under the proposed Plan of Allocation, the Net Settlement Fund will be allocated on a *pro rata* basis among all Class Member Plans based on their "Adjusted Claim Amounts." The amount of each Plan's Adjusted Claim Amount has already been calculated based on information obtained from Defendant's records.  Accordingly, a Plan is neither expected nor required to collect or submit any payment records, account statements or similar evidentiary materials with its Claim Form to establish the amount of its claim under this Settlement.  Under the terms of the Stipulation, in the event that a Plan wishes to obtain a payment from the Settlement, but believes that it has evidence that would establish that its calculated Adjusted Claim Amount is incorrect, it may dispute the calculation of its Adjusted Clam Amount by submitting a "Claim Amount Challenge" along with its properly executed Claim Form.

Financial Advisor Michael Callaway or any other member of the Callaway Team provided Consulting Services during the Class Period (collectively, with the Plaintiff Plans, the "Plans").   More specifically, the Complaint alleges that Merrill Lynch breached its fiduciary duties to the Plans by, among other things, (a) entering into fee arrangements with the Plans – and with certain third parties (such as mutual fund companies) who provided services to the Plans – that placed Merrill Lynch's financial interests ahead of the Plans' interests and that compromised Merrill Lynch's role as an "independent" advisor to the Plans, and (b) failing to utilize the full panoply of Merrill Lynch's manager selection and retention resources (including the full panoply of manager research and analysis services available through Merrill Lynch's offices in New Jersey) for the benefit of the Plans.   Plaintiffs alleged that the Plans suffered losses as a result of Merrill Lynch's breaches of its fiduciary duties, and demanded that Merrill Lynch disgorge all benefits, compensation, or other value it received in connection with the provision of Consulting Services to the Plans or the investment of the Plans' assets during the Class Period.

On September 15, 2010, Defendant filed a Notice of Removal of Civil Action, removing the Florida State Court Action to this Court where it is now pending under the caption *Board of Trustees of the City of Lake Worth Employees Retirement System, et al., v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, Case No.: 3:10-cv-845-TJC-MCR (M.D. Fla.) (the "Action").   One week after the removal of the Action to this Court, Defendant filed its Motion to Dismiss the Complaint and to Transfer Venue to the Southern District of Florida.

On October 25, 2010 (a) Plaintiffs filed their Opposition to the Motion to Dismiss, and (b) Merrill Lynch (pursuant to a stipulation between the parties) formally withdrew its Motion to Transfer Venue. On November 9, 2010, Defendant filed its Reply in support of its Motion to Dismiss. The Court heard oral argument on the motion on April 21, 2011. On May 31, 2011, the Court entered its Order and Opinion denying Defendant's Motion to Dismiss.

Following the denial of the Motion to Dismiss, the parties commenced discovery. On June 17, 2011, Plaintiffs filed their First Set of Requests for Production of Documents on Merrill Lynch. Thereafter, Merrill Lynch produced over two million pages of documents to Plaintiffs' Counsel.

On June 22, 2011, the Court entered a Case Management and Scheduling Order setting forth a schedule for class certification, discovery, and trial, and also referring the case to mediation before Judge Stettin.

On June 24, 2011, Defendant filed its Answer to the Complaint, wherein Defendant denied that it breached any fiduciary duties or caused losses to Plaintiffs, the Plaintiff Plans, or any of the other Plans that are members of the Class, and asserted defenses based upon, among other things, the statute of limitations, the economic loss rule, and the Plans' consent to the practices the Plaintiffs now contend violated Merrill Lynch's fiduciary duties.

In October 2011, both sides commenced formal deposition discovery. During October and November 2011, Plaintiffs took the depositions of three Merrill Lynch representatives (Matthew Pisanelli, Susan Brown-Vlacich and Terri Lockwood) in New

York, and Merrill Lynch took the depositions of a trustee representative of each of the three Plaintiff Plans (Robert Lepa on behalf of Lake Worth General Employees, Kenneth White on behalf of Lake Worth Police, and Richard Seaman on behalf of Lake Worth Firefighters) in Florida.

On November 28, 2011, Plaintiffs served their Motion for Class Certification on Merrill Lynch, together with their memorandum of law and multiple declarations and exhibits in support thereof (collectively, the "Class Certification Motion Papers").[5]

Although the Parties continued to vigorously litigate the Action, pursuant to the Court's June 22, 2011 directive, the Parties agreed that after each side had had a reasonable opportunity to conduct substantial document discovery and to begin targeted deposition discovery, they would participate in mediation before Judge Stettin. Accordingly, at the same time that the Parties were engaging in discovery, the Parties also entered into a mediation schedule with Judge Stettin. Pursuant to that schedule, each side agreed to submit written confidential mediation statements in advance of a face-to-face mediation session, which was to be held promptly after Plaintiffs had served their Class Certification Motion Papers.

On December 6, 2011, the Parties each submitted their respective Mediation Statements to Judge Stettin. On December 8, 2011, the Parties participated in a

---

[5] Because of the Parties' need to meet and confer over whether certain confidential materials included in Plaintiffs' Class Certification Motion Papers needed to be filed under seal – a procedure required under the Stipulated Confidentiality Agreement dated June 27, 2011 – the papers were filed with the Court a week later, on December 7, 2011.

mediation conference under the auspices of Judge Stettin.  At the mediation, in addition to being represented by their respective outside counsel, Merrill Lynch was represented by two of its officers with authority to negotiate on Merrill's behalf, and each Plaintiff Plan was represented by one of its trustees.  After a full day of negotiations, the Parties reached an agreement in principle to settle the Action.  However, a number of issues required further negotiation, with the result that the Parties' counsel continued negotiations over the following week in an effort to conclude a binding agreement.

With the assistance of Judge Stettin, and as a result of further arm's-length negotiations, the Parties entered into a binding Memorandum of Understanding ("MOU") on December 14, 2011, subject to formal approval by the Boards of Trustees of each Plaintiff Plan.  On January 11, 2012, the respective Boards of Trustees of the Plaintiff Plans, meeting in public session in Lake Worth, Florida, each unanimously approved the Settlement.

Following further discussions and negotiations with respect to the final "long-form" terms of the Settlement, on March 23, 2012, the Parties executed the Stipulation, which includes as Exhibits thereto the agreed form of the Preliminary Approval Order (which in turn includes as Exhibits thereto the proposed Notice, Claim Form and the agreed form of the Summary Notice) and the agreed form of the proposed Judgment.

## III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts have long recognized a strong policy and presumption in favor of class action settlements.  *See In re United States Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("[p]ublic policy strongly favors the pretrial settlement of class action lawsuits.")

(internal citations omitted); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) ("our judgment is informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims. Judicial review of a proposed class action settlement consists of a two-step process: (1) preliminary approval, and (2) a subsequent settlement fairness hearing. *See, e.g., Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV., 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

In the first step, the Court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the class. At this preliminary approval stage, the standards are more relaxed than those applied to a motion for final approval. *In re OCA, Inc. Sec. & Deriv. Litig.*, No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) ("As this motion is for *preliminary* approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval.") (citations omitted); *see also Manual for Complex Litigation* § 21.63 (4th ed. 2009) ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."). Instead, "[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *See Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV., 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (internal citations omitted).

10

Thus, at this point, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable and adequate. When the Court makes that ultimate determination at a later point, the Court will be asked to review the following "*Bennett* factors": (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition, if any, to the settlement; and (6) the stage of the proceedings at which the settlement was reached. *See Smith,* 2010 WL 2401149, at *2 (citing *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)); *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011); *In re Winn-Dixie Stores, Inc. ERISA Litig.,* No. 3:04-CV-194-J-33MCR, 2008 WL 815724, at *6 (M.D. Fla. Mar. 20, 2008).

Plaintiffs here request only that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement such that notice of the Settlement can be given to the Class. As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, the factors considered by courts in granting final approval of class action settlements also show that this Settlement is well within the range of possible approval, and therefore warrants preliminary approval.

**A.      The Settlement Is The Result Of Good Faith, Arm's-Length
         Negotiations By Well-Informed And Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when it is the
result of arm's-length negotiations between counsel.[6]  Indeed, "[i]n evaluating a proposed
class action settlement, the Court will not substitute its business judgment for that of the
parties; the only question ... is whether the settlement, taken as a whole, is so unfair on its
face as to preclude judicial approval."  *See In re Checking Account Overdraft Litig.*,
No. 09-MD-02036-JLK, 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011) (internal
citations and quotations omitted).  *See also In re Heritage Bond Litig.*, No. 02-ML-1475
DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("the trial judge, absent fraud,
collusion, or the like, should be hesitant to substitute its own judgment for that of
counsel.").

As noted above, the Settlement was achieved only after extensive arm's-length
negotiations – including an all-day mediation session conducted on December 8, 2011.
The mediation session was conducted under the auspices of Judge Stettin, a highly
respected and experienced mediator, and included the active participation of the Plaintiff
Plans, each of which was represented at the mediation by one its trustees.  During the
mediation, Plaintiffs' Counsel and counsel for Merrill Lynch presented, among other

---

[6]  *See City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)
("When sufficient discovery has been provided and the parties have bargained at arms-
length, there is a presumption in favor of the [class] settlement"); *Wal-Mart Stores, Inc. v.
Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting strong "presumption of
fairness" where settlement is product of arm's-length negotiations conducted by
experienced, capable counsel after meaningful discovery) (citation omitted).

things, their respective views regarding the merits of the litigation, including the evidence adduced during the course of discovery, Defendant's defenses, and issues relating to damages. Ultimately, after a full day of settlement negotiations, the Parties reached an agreement in principle to settle the Action, and after additional arm's-length negotiations over the next week, the Parties executed the binding MOU. The Parties and their counsel, who had participated in a half dozen depositions and obtained and reviewed voluminous documents, were thus well-informed of the strengths and weaknesses of their respective cases prior to reaching the agreement to settle the Action.

Moreover, in determining the good faith of this settlement proposal, the Court should consider the judgment of Plaintiffs' Counsel.[7] Here, Plaintiffs' Counsel include Bernstein Litowitz Berger & Grossmann LLP, one of the nation's leading class action litigation firms, and the law firms Klausner, Kaufman, Jensen & Levinson and Sugarman & Susskind, P.A, two of the nation's leading firms specializing in the representation of employee retirement benefit plans.[8] Accordingly, Plaintiffs' Counsel's judgment that this Settlement is in the best interests of the Class should be given considerable weight,

---

[7] *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (holding that "[a] district court properly considers the judgment of experienced counsel when asked to approve a class action settlement."); *Smith,* 2010 WL 2401149, at *2 n.1 (citing *Elkins v. Equitable Life Ins. of Iowa,* 1998 WL 133741 (M.D. Fla. Jan. 27, 1998); *Warren v. City of Tampa,* 693 F. Supp. 1051, 1055 (M.D. Fla. 1988)); *see also In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

[8] The firm's respective resumes will be submitted for the Court's review in connection with the papers supporting final approval of the Settlement.

especially where the settlement process was supervised by a distinguished former judge (Judge Stettin).

**B.      The Substantial Benefits For The Class, Weighed Against Litigation Risks, Supports Preliminary Approval**

Merrill Lynch has agreed to create a settlement fund of $8,500,000 in cash.  This substantial recovery is a tremendous benefit to the Class, especially in light of the risks posed by continued litigation.  Although Plaintiffs and their counsel believe their case to be strong, they faced a significant hurdle in overcoming Defendant's argument that Plaintiffs' claims for breach of fiduciary duty are barred by the "economic loss rule" under Florida law because the duties allegedly breached by Merrill Lynch arose from, and are inextricably intertwined with, Merrill's Lynch's obligations under the written Consulting Services agreements in force during the Class Period.  In addition, Plaintiffs also expected that Defendant would have continued to argue that its fee arrangements were sufficiently disclosed to the Plans to protect it from liability, and that Plaintiffs' arguments that Merrill Lynch was not entitled to collect certain types of fees were not supported by Plaintiffs' interpretations of relevant provisions of Florida law.

**C.      The Stage Of The Proceedings Supports Preliminary Approval**

The stage of the proceedings also supports preliminary approval of the Settlement.  As will be further detailed prior to the Settlement Hearing in Plaintiffs' Counsel's declaration supporting the Settlement, Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims asserted against Defendant.  This understanding was based on Plaintiffs' Counsel's diligent prosecution of this action, which included, among other things: (i) drafting the

detailed Complaint setting forth the Class's claims against Defendant; (ii) conducting an extensive factual investigation and thoroughly researching the applicable law with respect to the claims asserted in the Complaint and the potential defenses thereto; (iii) responding to and successfully opposing Defendant's motion to dismiss the Complaint; (iv) drafting the comprehensive Class Certification Motion Papers, which included Plaintiffs' memorandum of law and multiple declarations and exhibits in support thereof; (v) conducting extensive fact discovery, which included, among other things, the review of over two million pages of documents produced by Defendant and the taking or defending of a half-dozen depositions; and (vi) drafting Plaintiffs' mediation statement and preparing for and participating in the in-person mediation session and subsequent settlement negotiations.  There can be no question that, at the time the Settlement was reached, Plaintiffs' Counsel had a clear view of the strengths and weaknesses of the Class's claims.

Additionally, the Plaintiff Plans, sophisticated public pension plans, monitored this Action throughout its pendency and participated in-person in the negotiation of the Settlement at the mediation under the auspices of Judge Stettin.  Thus, the Settlement is the product of serious, informed, non-collusive negotiations and is well within the range of possible approval.  For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Class.

## IV.   NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the agreed-upon proposed Preliminary Approval Order, Plaintiffs' Counsel will notify Class Members of the Settlement by mailing the Notice and Claim Form to each Class Member.  The Notice will advise each Class Member of (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Plaintiffs' Counsel's motion for attorneys' fees and reimbursement of litigation expenses.  The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of litigation expenses, and for submitting a Claim Form.  The proposed Preliminary Approval Order further requires Plaintiffs' Counsel to cause the Summary Notice to be transmitted once over the internet via *PR Newswire*.

Plaintiffs' Counsel respectfully submit that the Notice and Summary Notice fairly apprise Class Members of their rights with respect to the Settlement, and that they (a) fully satisfy the requirements of Rule 23 and due process, (b) represent the best notice practicable under the circumstances, and (c) should be approved by the Court.  *See In re Checking Account Overdraft Litig.,* 2011 WL 5873389, at *6-8.

## V.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notice and Claim form and publishing the Summary Notice, and deadlines for submitting claims, for requesting exclusion from

the Class or for objecting to the Settlement.  Plaintiffs respectfully propose the following

schedule for the Court's consideration, as set forth in the proposed Preliminary Approval

Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice (Ex. A-1 to Preliminary Approval Order) and Claim Form (Ex. A-2 to Preliminary Approval Order)  to Class Members ("Notice Date"): | 15 business days after the entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Ex. A-3 to Preliminary Approval Order) over the internet: | 10 business days after the Notice Date |
| Filing of briefs in support of final approval of Settlement, Plan of Allocation, and Plaintiffs' Counsel's motion for attorneys' fees and expenses: | 35 calendar days before the Settlement Hearing |
| Deadline for Class Members to request exclusion from the Class or object to the Settlement, the Plan of Allocation, or the motion for attorneys' fees and expenses: | 21 calendar days before the Settlement Hearing |
| Filing reply papers in support of final approval of the Settlement, the Plan of Allocation, and the motion for attorneys' fees and expenses: | 7 calendar days before the Settlement Hearing |
| Settlement Hearing: | Week of July 16, 2012 (or at the Court's earliest convenience thereafter) |
| Deadline for Class Members to submit completed and executed Claim Forms: | 120 calendar days following the Notice Date |

## VI.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

On November 28, 2011, Plaintiffs filed their motion for class certification

supported by their memorandum of law and multiple accompanying declarations and

exhibits **[D.E. 69]**.   Under the class certification briefing schedule then in place,

Defendant's response to Plaintiffs' class certification motion was due December 30,

2011.   On December 8, 2011, at the conclusion of the full-day mediation session,

Plaintiffs and Defendant reached their agreement in principle to settle the Action.   On

December 18, 2011, pursuant to Defendant's stipulated motion for an extension of time to respond to the class certification motion, the Court was informed that the Parties had reached an agreement to settle and that the settlement papers being prepared by the Parties would, for purposes of settlement only, stipulate to certification of the class and provide for a class-wide settlement subject to Court approval.[9]  The Parties have now finalized the Stipulation, pursuant to which Plaintiffs and Defendant have stipulated and agreed, for purposes of settlement only, that the Court may certify the Class, certify the Plaintiff Plans as Class Representatives, and appoint Plaintiffs' Counsel as Class Counsel.  *See* Stip. ¶2.[10]

This Court may certify a class "solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue."  *In re Checking Account Overdraft Litig.*, 275 F.R.D 654, 659 (S.D. Fla. 2011) (quoting *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 671 (S.D. Fla. 2006)).  A settlement class, like other certified classes, must satisfy all of the requirements of Rules 23(a):  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and one of the three

---

[9] By Order dated November 11, 2011, the Court granted Defendant's motion for an extension of time to submit its response to the class certification motion.  The Court has since granted Defendant's three additional stipulated requests to extend the deadline for its response while the Parties worked to finalize the drafting of the settlement papers.

[10] As explained in footnote 2 above, the universe of plans that are included in the stipulated Class (subject to any Class Members' right to file a valid request for exclusion as set forth in the Stipulation) is set forth on Schedule 2 to the Stipulation.  Schedule 1 to the Stipulation sets forth the universe of the Plans that are excluded from the Class by definition because they had brought separate arbitration or litigation proceedings against Merrill Lynch or a member of the Callaway Team on or before December 14, 2011.

requirements of Rule 23(b).  *Borcea*, 238 F.R.D. at 672.  However, the manageability concerns of Rule 23(b)(3) are not applicable.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems…is not a consideration when settlement-only certification is requested.").

For the reasons set forth in Plaintiffs' previously filed motion for class certification (which is incorporated by reference herein), Plaintiffs respectfully submit that the proposed Class meets all of the requirements of Rules 23(a) and Rule 23(b)(3). Accordingly, by this motion, Plaintiffs request that the Court enter the proposed Preliminary Approval Order providing for certification of the Class, certification of the Plaintiff Plans as Class Representatives, and appointment of Plaintiffs' Counsel as Class Counsel for settlement purposes.

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order which, among other things, will (i) preliminarily approve the proposed Settlement; (ii) certify the Class, certify Plaintiffs as Class Representatives, and appoint Plaintiffs' Counsel as Class Counsel for purposes of the Settlement only; (iii) approve the proposed form and manner of notice to the Class Members; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

March 23, 2012                      By:   _/s/ Robert D. Klausner_
                                   Robert D. Klausner (Fla. Bar No. 244082)
                                   Adam P. Levinson (Fla. Bar No. 055344)
                                   **KLAUSNER, KAUFMAN, JENSEN**
                                   **& LEVINSON, P.A.**
                                   10059 N.W. 1st Court
                                   Plantation, Florida 33324
                                   Telephone:  (954) 916-1202
                                   Facsimile:  (954) 916-1232
                                   Bob@robertdklausner.com
                                   Adam@robertklausner.com

                                   William C. Fredericks (admitted *pro hac vice*)
                                   **BERNSTEIN LITOWITZ BERGER**
                                   **& GROSSMANN LLP**
                                   1285 Avenue of the Americas
                                   New York, New York 10019
                                   Telephone:  (212) 554-1400
                                   Facsimile:  (212) 554-1444
                                   wfredericks@blbglaw.com

                                   Robert Sugarman (Fla. Bar No. 149388)
                                   Ivelisse Berio LeBeau (Fla. Bar No. 907693)
                                   **SUGARMAN & SUSSKIND, P.A.**
                                   100 Miracle Mile, Suite 300
                                   Coral Gables, Florida 33134
                                   Telephone:  (305) 592-2801
                                   Facsimile:  (305) 447-8115
                                   Sugarman@sugarmansusskind.com
                                   Ivelisse@sugarmansusskind.com

                                   *Co-Counsel for Plaintiffs*

#626238.5

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of March, 2012, I electronically filed the foregoing PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT, AND (III) APPROVAL OF NOTICE TO THE CLASS AND INCORPORATED MEMORANDUM OF LAW with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List, either via transmission of Notices of Electronic Filing Generated by the CM/ECF system or in some other authorized manner for those counsel who are authorized to receive electronically Notices of Electronic Filing.


By:   _/s/ Adam P. Levinson_
      Adam P. Levinson

**SERVICE LIST**

David A. Coulson
(Fla. Bar No. 176222)
D. Porpoise Evans
(Fla. Bar No. 576883)
**GREENBERG TRAURIG, LLP**
Suite 4400
333 SE 2nd Ave
Miami, FL 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717
CoulsonD@gtlaw.com
EvansP@gtlaw.com

William C. Fredericks
(admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444
wfredericks@blbglaw.com

Terry R. Weiss
(Fla. Bar No. 057906)
**GREENBERG TRAURIG, LLP**
3290 Northside Parkway NW, Suite 400
Atlanta, Georgia  30327
Telephone:  (678) 553-7328
Facsimile:   (678) 553-7329
WeissTR@gtlaw.com

Robert Sugarman
(Fla. Bar No. 149388)
Ivelisse Berio LeBeau
(Fla. Bar No. 907693)
**SUGARMAN & SUSSKIND, P.A.**
100 Miracle Mile, Suite 300
Coral Gables, Florida 33134
Telephone:  (305) 592-2801
Facsimile:  (305) 447-8115
Sugarman@sugarmansusskind.com
Ivelisse@sugarmansusskind.com