EXHIBIT 1

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

BOARD OF TRUSTEES OF THE CITY OF
LAKE WORTH EMPLOYEES' RETIREMENT
SYSTEM, et al.,

          Plaintiffs,

vs.                              Case No. 3:10-cv-845-J-32MCR

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED,

          Defendant.

## NOTICE OF (I) PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION, (II) SETTLEMENT FAIRNESS HEARING, AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### *A Federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:**  Please be advised that, based on records maintained by defendant Merrill Lynch Pierce Fenner & Smith Inc. ("Defendant" or "Merrill Lynch"), it has been determined that the _____ [INSERT PLAN NAME] ("Your Plan") is a member of the Class (as defined below) in the above-captioned consolidated class action (the "Action") pending in the United States District Court for the Middle District of Florida (the "Court").[1]

**NOTICE OF SETTLEMENT:**  Please also be advised that plaintiffs in the Action, the respective Boards of Trustees of the City of Lake Worth Employees' Retirement System ("Lake Worth General Employees"), the City of Lake Worth Police Officers' Retirement System ("Lake Worth Police"), and the City of Lake Worth Firefighters' Pension Trust Fund ("Lake Worth Firefighters") (collectively, the "Plaintiffs Plans"), on behalf of the Plaintiffs Plans and the Class, have reached a proposed settlement of the Action for a total of $8,500,000 in cash that, if approved, will resolve all claims in the Action.

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights that Your Plan has with respect to the proposed Settlement, including what the Plan has to do to receive a cash payment from the Settlement.  Your Plan's legal rights, as well as the legal rights of its named fiduciaries in their capacities as such, will be affected whether or not you act.**

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated March 23, 2012 (the "Stipulation"), which is available on the website established for the Settlement at www.mlfloridapensionplansettlement.com.

1.      **Description of the Action and Class:**   This Notice relates to a proposed Settlement of claims in a pending class action lawsuit alleging that Merrill Lynch breached its fiduciary duties to certain Florida public employee retirement benefit plans for which Merrill Lynch served as an investment consultant during period from July 1, 2000, through and including June 30, 2008 (the "Class Period").   The proposed Settlement, if approved by the Court, will settle claims of all Florida public employee retirement benefit plans for which Merrill Lynch and Merrill Lynch Financial Advisor Michael Callaway or any other member of the Callaway Team (as defined below) provided Consulting Services (as defined below) during the Class Period, or any portion thereof (the "Class"),[2] except for certain Plans that are excluded from the Class by definition (*see* paragraph 26 below) or that validly elect to exclude themselves from the Class (*see* paragraphs 62-64 below).   As noted above, based on records maintained by Defendant Merrill Lynch, it has been determined that Your Plan is a member of the Class (unless it validly elects to exclude itself from the Class).

2.      **The Settlement Consideration:**   Subject to Court approval, and as described more fully below, Plaintiffs, on behalf of the Plaintiff Plans and the other members of the Class, have agreed to settle all claims asserted against Merrill Lynch in the Action in exchange for a settlement payment by Merrill Lynch of $8,500,000 in cash (the "Settlement Amount") to be deposited into an escrow account.[3]   The Settlement Amount together with any interest earned thereon while on deposit in the escrow account is referred to as the "Settlement Fund".   The "Net Settlement Fund" (the Settlement Fund less Taxes, Notice and Administration Costs, and any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed in accordance with a plan of allocation that must be approved by the Court, and which will determine how the Net Settlement Fund shall be allocated among members of the Class.   The proposed plan of allocation (the "Plan of Allocation") is set forth on pages __ - __ below, and seeks to allocate the Net Settlement Fund on a *pro rata* basis to Class Members in proportion to the amount of fees or other payments that Merrill Lynch received and retained from Class Members and/or other entities in violation of Merrill Lynch's alleged fiduciary duties to the members of the Class.

3.      **Application for Attorneys' Fees and Expenses:**   Plaintiffs' Counsel (identified in paragraph 4 below), who have been prosecuting the Action on a wholly contingent basis since its inception, have not received any payment of attorneys' fees for their representation of the Class, and have advanced all of the funds to pay expenses necessarily incurred to prosecute the Action to date.   Plaintiffs' Counsel will apply to the Court for (a) an award of attorneys' fees from the Settlement Fund in the amount of 25% of the Settlement Fund; and (b) reimbursement of Litigation Expenses paid or incurred in connection with prosecuting and settling the Action, in an amount not to exceed $100,000, to be paid from the Settlement Fund.

4.      **Identification of Attorneys' Representatives:**   Plaintiffs and the Class are represented by the law firms of Bernstein Litowitz Berger & Grossmann LLP; Klausner,

---

[2] The term "Plans" as used herein refers to the Plaintiff Plans and all other Florida public employee retirement benefit plans that fall within the definition of the Class.

[3] In addition to the $8,500,000 settlement payment, Defendant has agreed to deposit $1,000 into escrow to be applied to the costs of providing notice of the Settlement to the Class.

Kaufman, Jensen & Levinson; and Sugarman & Susskind, P.A. ("Plaintiffs' Counsel").   Any questions regarding the Settlement should be directed to:

> Robert D. Klausner, Esq. or Adam P. Levinson, Esq., Klausner, Kaufman, Jensen & Levinson, 10059 N.W. 1st Court, Plantation, FL  33324, 1-954-916-1202, merrillsuit@gmail.com; or

> William C. Fredericks, Esq., Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, (800) 380-8496, blbg@blbglaw.com; or

> Ivelisse Berio LeBeau, Esq., Sugarman & Susskind, P.A., 100 Miracle Mile, Suite 300, Coral Gables, FL  33134, (800) 329-2122, info@sugarmansusskind.com.

**Please do not contact any representative of Merrill Lynch or the Court with questions about the Settlement**.

5.      **Reasons for the Settlement:**  Plaintiffs' principal reason for entering into the Settlement is the substantial cash benefit payable to the Class now, without further risk or the delays inherent in further litigation.  The significant cash benefit under the Settlement must be considered against the significant risk that a smaller recovery – or, indeed, no recovery at all – might be achieved after contested motions, trial and likely appeals, a process that could last several years into the future.  For Defendant Merrill Lynch, which denies all allegations of wrongdoing or liability whatsoever, the principal reason for entering into the Settlement is to eliminate the expense, risks, and uncertainty of further litigation.

| YOUR PLAN'S LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **REMAIN A MEMBER OF THE CLASS** | This is the only way for Your Plan to get a payment from the Settlement.  If Your Plan wishes to obtain a payment from the Settlement, it will need to file a Claim Form (which is included with this Notice) postmarked no later than September 11, 2012.[4] |

---

[4] **PLEASE NOTE:**  Unlike many other class action settlements, the amount of each Plan's "Adjusted Claim Amount" has already been determined based on information obtained from Defendant's records.  *See* "Proposed Plan of Allocation," below.  ***Accordingly, a Plan is neither expected nor required to collect or submit any payment records, account statements or similar evidentiary materials with its Claim Form to establish the amount of its claim under this Settlement.***  In the event that a Plan wishes to obtain a payment from the Settlement, but believes that it has evidence that would establish that its *pro rata* share of the Settlement should be higher than that set forth in Exhibit 1 to this Notice, it must file both a Claim Form and the additional materials described in paragraph 47 no later than September 11, 2012.

| | |
|---|---|
| **EXCLUDE YOUR PLAN FROM THE CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN JULY 6, 2012.** | Get no payment.  This is the only option that allows Your Plan to ever be part of any other lawsuit against Merrill Lynch or the other Released Defendant Parties concerning the claims that were, or could have been, asserted in this case.  If Your Plan excludes itself from the Class, the Plan will *not* be eligible to get any payment from the Settlement Fund. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN JULY 6, 2012.** | Write to the Court and explain why Your Plan does not like the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of expenses.   Your Plan cannot object to the Settlement if it excludes itself from the Class. |
| **GO TO THE HEARING ON JULY 27, 2012 AT 10:00 A.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN JULY 6, 2012.** | Ask to speak in Court about the fairness of the Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of expenses. |
| **DO NOTHING.** | Get no payment.  Remain a Class Member and be bound by any judgments or orders entered by the Court in the Action. |

| | WHAT THIS NOTICE CONTAINS | |
|---|---|---|

| | | |
|---|---|---|
| 1. | Why Did Our Plan Get This Notice? | Page _ |
| 2. | What Is This Case About?  What Has Happened So Far? | Page _ |
| 3. | Which Plans Are Included In The Class? | Page _ |
| 4. | What Are Plaintiffs' Reasons For The Settlement? | Page _ |
| 5. | What Might Happen If There Were No Settlement? | Page _ |
| 6. | How Much Will Our Plan's Payment Be? | Page _ |
| 7. | What Rights Will Our Plan Give Up By Remaining In The Class? | Page _ |
| 8. | What Payment Are The Attorneys For The Class Seeking?  How Will The Lawyers Be Paid? | Page _ |
| 9. | How Can Our Plan Participate In The Settlement?  What Does Our Plan Need To Do? | Page _ |
| 10. | What If Our Plan Does Not Want To Participate In The Settlement?  How Does The Plan Exclude Itself? | Page _ |
| 11. | When And Where Will the Court Decide Whether To Approve The Settlement?  Does A Representative Of Our Plan Have To Come To The Hearing? May A Representative Of Our Plan Speak At The Hearing If The Plan Does Not Like The Settlement or Request for Attorneys' Fees and Reimbursement of Litigation Expenses? | Page _ |
| 12. | Can A Plan Representative See The Court File?  Whom Should We Contact If We Have Questions? | Page _ |

| | WHY DID OUR PLAN GET THIS NOTICE? | |
|---|---|---|

6.      This Notice is being sent to Your Plan, c/o Your Plan's Plan Administrator, pursuant to an Order of the Court because it has been determined that Your Plan is a  member of the Class in this Action.  The Court has directed us to send Your Plan this Notice because the named fiduciaries of Your Plan have a right to know about Your Plan's options before the Court rules on the proposed Settlement of this case.  Additionally, Your Plan's named fiduciaries have the right to understand how a class action lawsuit generally affects Your Plan's legal rights.  If the Court approves the Settlement, the claims administrator selected by Plaintiffs and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

7.      In a class action lawsuit, one or more plaintiffs, commonly called "named" or "lead" plaintiffs, sue on behalf of all persons or entities that have similar claims, commonly known as "the class" or "the class members."  In this Action, the respective Boards of Trustees of the City of Lake Worth Employees' Retirement System, the City of Lake Worth Police Officers' Retirement System, and the City of Lake Worth Firefighters' Pension Trust Fund are the named Plaintiffs, and they are represented in the Action by Plaintiffs' Counsel.  A class action is a type of lawsuit in which the claims of a number of persons or entities are resolved

together in one proceeding, thus providing the class members with both consistency and efficiency. Once the class is certified, the Court must resolve all issues on behalf of the class members, except for any persons or entities that choose to exclude themselves from the class. (For more information on excluding Your Plan from the Class, please read "What If Our Plan Does Not Want To Participate In The Settlement? How Does the Plan Exclude Itself?," on page __ below.)

8.      The Court in charge of this case is the United States District Court for the Middle District of Florida, and the case is known as <u>Board of Trustees of the City of Lake Worth Employees Retirement System, et al., v. Merrill Lynch, Pierce, Fenner & Smith Incorporated</u>, Case No.: 3:10-cv-845-J-32MCR. The Judge presiding over this case is The Honorable Timothy J. Corrigan, United States District Judge. The persons and entities who are suing are called Plaintiffs, and the company they are suing, Merrill Lynch, is called the Defendant. If the Settlement is approved, it will resolve all claims in the Action by Class Members against Defendant and will bring the Action to an end.

9.      This Notice explains the lawsuit, the Settlement, Your Plan's legal rights, what benefits are available to Your Plan, and how to get them. The purpose of this Notice is to inform the named fiduciaries of Your Plan of the existence of this case and that it is a class action, and to explain how Your Plan is affected and how it may exclude itself from the Class if it wishes to do so. The Notice also is being sent to inform Your Plan's named fiduciaries of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the proposed Plan of Allocation, and the motion by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").

10.      The Settlement Hearing will be held on July 27, 2012 at 10:00 a.m., before The Honorable Timothy J. Corrigan, in Courtroom 10D of the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, FL 32202, to determine:

(a)      whether the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court;

(b)      whether the Released Plaintiff Claims against Defendant and the other Released Defendant Parties should be dismissed with prejudice as set forth in the Stipulation;

(c)      whether the proposed Plan of Allocation is fair and reasonable and should be approved by the Court; and

(d)      whether Plaintiffs' Counsel's request for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved by the Court.

11.      This Notice does not express any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement and the Plan of Allocation. If the Court approves the Settlement and the Plan of Allocation, payments to Authorized Claimants will be made after any appeals are resolved, and after the completion of all claims processing. Please be patient.

| WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR? |
|---|

12.     On or about July 15, 2010, Plaintiffs filed a putative class action against Merrill Lynch, captioned <u>Board of Trustees of the City of Lake Worth Employees Retirement System, et al., v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, No. 16-2010-CA-008965, in the Circuit Court of the Fourth Circuit in and for Duval County, Florida (the "Florida State Court Action").

13.     The class action complaint (the "Complaint") filed by Plaintiffs alleged that Merrill Lynch breached its fiduciary duties to the Florida public employee retirement plans that Plaintiffs represent as trustees (the "Plaintiff Plans"), and to all other Florida public employee retirement benefit plans for which Merrill Lynch and Merrill Lynch Financial Advisor Michael Callaway or any other member of the Callaway Team[5] provided Consulting Services[6] during the Class Period (collectively, with the Plaintiff Plans, the "Plans").  More specifically, the Complaint alleges that Merrill Lynch breached its fiduciary duties to the Plans by, among other things, (a) entering into fee arrangements with the Plans – and with certain third parties (such as mutual fund companies) who provided services to the Plans – that placed Merrill Lynch's financial interests ahead of the Plans' interests and that compromised Merrill Lynch's role as an "independent" advisor to the Plans, and (b) failing to utilize the full panoply of Merrill Lynch's manager selection and retention resources (including the full panoply of manager research and analysis services available through Merrill Lynch's offices in New Jersey) for the benefit of the Plans. Plaintiffs alleged that the Plans suffered losses as a result of Merrill Lynch's breaches of its fiduciary duties, and demanded that Merrill Lynch disgorge all benefits, compensation, or other value it received in connection with the provision of Consulting Services to the Plans or the investment of the Plans' assets during the Class Period.

14.     On September 15, 2010, Defendant Merrill Lynch filed a Notice of Removal of Civil Action, removing the Florida State Court Action to this Court.  Accordingly, the action is now pending in federal court under the caption <u>Board of Trustees of the City of Lake Worth Employees Retirement System, et al., v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, Case No.: 3:10-cv-845-TJC-MCR (M.D. Fla.) (the "Action").

15.     On September 22, 2010, Defendant filed its Motion to Dismiss the Complaint and to Transfer Venue to the Southern District of Florida.  On October 25, 2010 (a) Plaintiffs filed their Opposition to the Motion to Dismiss, and (b) Defendant Merrill Lynch (pursuant to a stipulation between the parties) formally withdrew its Motion to Transfer Venue.  On November 9, 2010, Defendant filed its Reply in support of its Motion to Dismiss.  Thereafter, the Court

---

[5] "Callaway Team" refers to Michael Callaway, Melissa Callaway and all other Merrill Lynch employees who, before or during the Class Period, worked under Michael or Melissa Callaway's direct or indirect supervision at the Merrill Lynch branch office in Florida where Michael and Melissa Callaway were based.

[6] "Consulting Services" means all consulting and investment advisory services provided by Merrill Lynch, Michael Callaway and/or any other member of the Callaway Team to any Class Member, which services are the subject of and described in the disclosure statements entitled "Merrill Lynch Consulting Services Disclosure Statement" that Merrill Lynch filed with the U.S. Securities and Exchange Commission during the Class Period.

heard oral argument on the Motion to Dismiss.  On May 31, 2011, the Court entered its Order and Opinion denying Defendant's Motion to Dismiss.

16.     Following the denial of the Motion to Dismiss, the parties commenced discovery. On June 17, 2011, Plaintiffs filed their First Set of Requests for Production of Documents on Merrill Lynch.  Thereafter, Merrill Lynch produced over two million pages of documents to Plaintiffs' Counsel.

17.     On June 22, 2011, the Court entered a Case Management and Scheduling Order setting forth a schedule for class certification, discovery, and trial, and also referring the case to mediation before Judge Herbert Stettin (ret.).

18.     On June 24, 2011, Defendant filed its Answer to the Complaint, wherein Defendant denied that it breached any fiduciary duties or caused losses to Plaintiffs, Plaintiff Plans, or the Plans, and asserted defenses based upon, among other things, the statute of limitations, the economic loss rule, and the Plans' consent to the practices the Plaintiffs now contend violated Merrill Lynch's fiduciary duties.

19.     In October 2011, both sides commenced formal deposition discovery.  For example, during October and November 2011, Plaintiffs took depositions pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure of three Merrill Lynch representatives in New York, and Defendant Merrill Lynch took the depositions of a trustee representative of each of the three Plaintiff Plans in Florida.

20.     On November 28, 2011, Plaintiffs served their Motion for Class Certification on Merrill Lynch, together with their memorandum of law and multiple declarations and exhibits in support thereof (collectively, the "Class Certification Motion Papers").

21.     Although the Parties continued to vigorously litigate the Action, pursuant to the Court's June 22, 2011 directive, the Parties agreed that after each side had had a reasonable opportunity to conduct substantial document discovery and to begin targeted deposition discovery, they would participate in mediation before Judge Stettin (ret.) (hereafter, the "Mediator").  Accordingly, at the same time that the Parties were engaging in discovery, the Parties also entered into a mediation schedule with the Mediator.  Pursuant to that schedule, each side agreed to submit written confidential mediation statements in advance of a face-to-face mediation session, which was to be held promptly after Plaintiffs had served their Class Certification Motion Papers.

22.     On December 6, 2011, the Parties each submitted their respective Mediation Statements to the Mediator.  On December 8, 2011, the Parties participated in a mediation conference under the auspices of the Mediator.  At the mediation, in addition to being represented by their respective outside counsel, Merrill Lynch was represented by two of its employees with authority to negotiate on Merrill's behalf, and each Plaintiff Plan was represented by one of its trustees.  After a full day of negotiations, the Parties reached an agreement in principle to settle the Action.  However, a number of issues required further negotiation, with the result that the Parties' counsel continued negotiations over the following week in an effort to conclude a binding agreement.

23.     With the assistance of the Mediator, and as a result of further arm's-length negotiations, the Parties entered into a binding Memorandum of Understanding (the "MOU") on December 14, 2011, subject to formal approval by the Boards of Trustees of each Plaintiff Plan. On January 11, 2012, the respective Boards of Trustees of the Plaintiff Plans, meeting in public session in Lake Worth, Florida, each unanimously approved the Settlement.

24.     Following further discussions and negotiations with respect to the final terms of the Settlement, on March 23, 2012, the Parties executed a "long form" written Stipulation of Settlement (the "Stipulation").   On April 24, 2012, the Court entered an Order Preliminarily Approving Proposed Settlement and Providing for Notice, which preliminarily approved the Settlement, authorized this Notice be sent to the Class Members, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

25.     As set forth above, Plaintiffs' Counsel have conducted an investigation and pursued significant discovery into the claims and the underlying events and transactions alleged in the Complaint.  Plaintiffs' Counsel have analyzed the evidence adduced during their investigation and through discovery, which included, among other things, the review of over two million pages of documents and the taking or defending of a half-dozen depositions, and have also thoroughly researched the applicable law with respect to the claims asserted against the Defendant and the potential defenses thereto.  Plaintiffs' Counsel have also vigorously litigated this Action through their successful opposition to Defendant's Motion to Dismiss, and filed their comprehensive motion papers in support of class certification before negotiating the Settlement.

| WHICH PLANS ARE INCLUDED IN THE CLASS? |
|---|

26.     The Class consists of:

Any and all Florida public employee retirement benefit plans for which Merrill Lynch and Merrill Lynch Financial Advisor Michael Callaway or any other member of the Callaway Team provided Consulting Services during the period from July 1, 2000, through and including June 30, 2008, or any portion thereof. Excluded from the Class are all such Plans that had brought separate arbitration or litigation proceedings against Merrill Lynch or any member of the Callaway Team on or before December 14, 2011, as listed on Schedule 1 to the Stipulation. The Class also does not include those Plans which timely request exclusion from the Class pursuant to this Notice (*see* "What If Our Plan Does Not Want To Participate In The Settlement?  How Does the Plan Exclude Itself?" on page __ below)

**BASED ON INFORMATION PROVIDED BY DEFENDANT MERRILL LYNCH, IT HAS BEEN DETERMINED BY THE PARTIES THAT YOUR PLAN IS A MEMBER OF THE CLASS.  THEREFORE, YOUR PLAN WILL BE SUBJECT TO THE TERMS AND CONDITIONS OF THE STIPULATION OF SETTLEMENT UNLESS A TIMELY REQUEST FOR EXCLUSION IS SUBMITTED BY THE PLAN.  HOWEVER, IF YOUR PLAN WISHES TO REMAIN IN THE CLASS <u>AND</u> TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE SETTLEMENT, PLEASE NOTE THAT**

**YOUR PLAN MUST SUBMIT THE CLAIM FORM ACCOMPANYING THIS NOTICE POSTMARKED BY NO LATER THAN SEPTEMBER 11, 2012.**

| WHAT ARE PLAINTIFFS' REASONS FOR THE SETTLEMENT? |
| --- |

27.    Plaintiffs and Plaintiffs' Counsel believe that the claims asserted against Defendant in this Action have substantial merit.  They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against Defendant through trial and appeals, as well as the difficulties in establishing liability and damages at trial that this Action presented.  Plaintiffs and Plaintiffs' Counsel have taken into account the possibility that the claims asserted in the Complaint might have been dismissed following the completion of discovery in response to Merrill Lynch's anticipated motion for summary judgment, and have also considered the nature of the various issues that would have been presented in the event of a trial of the Action.  Plaintiffs and Plaintiffs' Counsel have considered the arguments advanced by Merrill Lynch, including its argument that Plaintiffs' claims for breach of fiduciary duty are barred by the "economic loss rule" under Florida law, a doctrine which prevents parties to a contract from seeking to recover damages in tort for matters arising out of the contract.  According to Merrill Lynch, the economic loss rule bars the claims asserted by Plaintiffs in this Action because the duties allegedly breached by Merrill Lynch arose from, and are inextricably intertwined with, the obligations outlined in the parties written agreements in force during the Class Period.  In addition, Merrill Lynch would have likely argued that its fee arrangements were sufficiently disclosed to protect it from liability, and that Plaintiffs' arguments that Merrill Lynch was not entitled to collect certain types of fees were not supported by Plaintiffs' interpretations of relevant provisions of Florida law.  Although Plaintiffs and Plaintiffs' Counsel believe that they have meritorious arguments to counter Merrill Lynch's arguments, they also recognize the real risk that, if this litigation were to have continued, Merrill Lynch might have been able to establish various defenses to the claims asserted in the Complaint, and that there might be little or no recovery at all for the Class had the case proceeded to trial.

28.    In agreeing to the Settlement, Plaintiffs and Plaintiffs' Counsel have also considered the fact that any recoveries obtained from a favorable verdict after a trial would still be in jeopardy on appeal, and that, even if a favorable verdict were ultimately sustained on appeal, it would likely take years before the case was finally resolved, absent a settlement.  In light of the amount of the Settlement, namely $8,500,000 in cash (less the various deductions described in this Notice), and the benefits of immediate and certain recovery to the Class as compared to the risks and uncertainties of ever obtaining a superior recovery at some indeterminate date in the future, Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class.

29.    Merrill Lynch has denied the claims asserted against it in the Action and denies having engaged in any wrongdoing or violation of law of any kind whatsoever.  Merrill Lynch has agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, the Settlement may not be construed as an admission of Merrill Lynch's wrongdoing.

### WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

30.     If there were no Settlement and Plaintiffs failed to establish any essential legal or factual element of its claims, neither the Plaintiff Plans nor the other members of the Class would recover anything from Defendant.   Also, if Defendant were successful in proving any of its defenses, the Class likely would recover substantially less than the amount provided in the Settlement, or nothing at all.

### HOW MUCH WILL OUR PLAN'S PAYMENT BE?

31.     At this time, it is not possible to state with certainty how much Your Plan will receive from the Settlement.  For more information, *see* "Plan of Allocation" at paragraphs 41-48 below.

32.     Pursuant to the Settlement, Defendant has agreed to pay or cause to be paid Eight Million Five Hundred Thousand Dollars ($8,500,000) in cash (the "Settlement Amount").  The Settlement Amount will be deposited into an escrow account.  The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of any such taxes (including the reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Class Members and administering the Settlement on behalf of Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Class Members as set forth in the proposed plan of allocation (the "Plan of Allocation") or such other plan as the Court may approve.

33.     The Net Settlement Fund will not be distributed until the Court has approved a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

34.     Neither Defendant nor any other person or entity that paid any portion of the Settlement Amount on its behalf are entitled to get back any portion of the Settlement Fund once the Court's Order or Judgment approving the Settlement becomes Final.  Defendant shall not have any liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund or the Plan of Allocation.

35.     Approval of the Settlement is independent from approval of the plan of allocation.  Any determination with respect to the plan of allocation will not affect the Settlement, if approved.

36.     Each Class Member wishing to receive its share of the Net Settlement Fund must timely submit a valid Claim Form postmarked on or before September 11, 2012 to the address set forth in the Claim Form that accompanies this Notice.

37.     Unless the Court otherwise orders, any Class Member that fails to submit a Claim

Form postmarked on or before September 11, 2012 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Class Member releases the Released Plaintiff Claims (as defined in paragraph 52 below) against the Released Defendant Parties (as defined in paragraph 53 below) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiff Claims against any of the Released Defendant Parties regardless of whether or not such Class Member submits a Claim Form.

38.     The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Class Member.

39.     Each Class Member shall be deemed to have submitted to the jurisdiction of the United States District Court for the Middle District of Florida with respect to its Claim.

40.     Any Class Member that requests exclusion from the Class will not be eligible to receive a distribution from the Net Settlement Fund and should not submit a Claim Form.

**PROPOSED PLAN OF ALLOCATION**

41.     As summarized above, Plaintiffs' primary theory of liability against Merrill Lynch is that Merrill Lynch breached its fiduciary duties to the Plans during the Class Period by (a) entering into fee arrangements with the Plans – and with certain third parties (such as mutual fund companies) which provided services to the Plans – that placed Merrill Lynch's financial interests ahead of the Plans' interests and compromised Merrill Lynch's role as an  "independent" advisor to the Plans, and (b) failing to utilize the full panoply of Merrill Lynch's manager selection and retention resources (including the full panoply of manager research and analyses services available through Merrill Lynch's offices in New Jersey) for the benefit of the Plans. Accordingly, at all material times, Plaintiffs' primary theory of damages has been based on a theory of "disgorgement," *i.e.,* that Merrill Lynch (as a result of its above alleged breaches of fiduciary duty) should be required to refund (or "disgorge") all fees that Merrill Lynch received from any source in connection with the provision of Consulting Services to the Plans or the investment of Plan assets.

42.     Plaintiffs' Counsel have therefore developed a Plan of Allocation that will allocate the Net Settlement Fund among all Class Member Plans using a methodology that has: (1) approximated the total amount of fees that Merrill Lynch (including its Citation brokerage unit) received from all sources (including the Plans, various mutual fund companies and certain investment managers) and that Merrill Lynch retained in connection with the provision of Consulting Services to the Plans or the investment of Plan assets during the Class Period (the "Total Approximate Merrill Lynch Fee Amount"); (2) approximated, for each Plan separately, how much of the Total Approximate Merrill Lynch Fee Amount was paid to Merrill Lynch in connection with the provision of Consulting Services to that particular Plan (or the investment of that Plan's assets) (the "Unadjusted Plan Claim Amounts"); and (3) adjusted each Plan's Unadjusted Plan Claim Amount to reflect certain refunds of 12b-1 mutual fund fees which Merrill Lynch had originally retained but ultimately reimbursed back to certain affected Plans in 2007 or 2008 (the "Adjusted Claim Amounts").

43.     Under the Plan of Allocation, each Authorized Claimant[7] will receive a payment from the Net Settlement Fund based on its *pro rata* share of the Fund ("*Pro Rata* Share"), which will be determined for each Plan by dividing the Plan's Adjusted Claim Amount by the total Adjusted Claim Amounts of all Authorized Claimants.  Based on the assumption that each Plan will submit a timely and properly executed Claim Form (and that there are no changes to any Adjusted Claim Amounts as a result of any successful "Claim Amount Challenge" as described in paragraph 47 below), Plaintiffs' Counsel have calculated each Plan's *Pro Rata* Share of the Net Settlement Fund, which will be multiplied against the available balance of the Net Settlement Fund at the time of distribution to determine each Authorized Claimant's payment amount.

44.     Based on information provided to Plaintiffs and their counsel by Merrill Lynch and Merrill Lynch's damages experts in the course of formal discovery and subsequent post-settlement due diligence discovery, the Total Adjusted Approximate Merrill Lynch Fee Amount (equal to the maximum amount of fees subject to disgorgement under Plaintiffs' theory of liability) is $14,557,196.  This figure consists of the sum of the following fees received by Merrill Lynch during the Class Period: (a) all investment advisory fees and Citation directed brokerage trading commissions paid by the Plans to Merrill Lynch, (b) all finders' fees paid to Merrill Lynch by mutual fund companies or other money managers in connection with the investment of Plan assets, and (c) all 12b-1 fees paid by certain mutual funds to Merrill Lynch in connection with the investment of Plan assets in those mutual funds, less the amount of such 12b-1 fees subsequently refunded by Merrill Lynch to the Plans ("12b-1 Fee Refund Amounts").

45.     Based on schedules and other documents provided to them by Merrill Lynch and its damages expert, Plaintiffs' Counsel have assembled a "Claim Amount Table" setting forth each Plan's pre-calculated (a) Unadjusted Claim Amount; (b) 12b-1 Fee Refund Amount (if any); (c) Adjusted Claim Amount; and (d) *Pro Rata* Share.[8]   The Claim Amount Table is set forth on Exhibit 1 to this Notice.  To preserve each Plan's confidentiality, each Plan is identified in the Claim Amount Table only by a unique identification number.  However, each Plan's

---

[7] An "Authorized Claimant" is a Class Member that submits a properly executed Claim Form to the Claims Administrator which is (a) submitted in accordance with the requirements set forth in this Notice, and (b) is approved for payment from the Net Settlement Fund.

[8] Because of limitations and gaps in the available Merrill Lynch data and records, in preparing the Claim Amount Table it was not possible to calculate each Plan's precise Unadjusted Claim Amount or precise Adjusted Claim Amount, primarily because Merrill Lynch lacked reliable data that would allow it break down which fees were attributable to which specific Plans for the periods (a) July 1, 2000 through December 31, 2001, and (b) January 1, 2007 through June 30, 2008 (the first 18 months and last 18 months, respectively, of the Class Period).  Accordingly, the amount of fees received by Merrill Lynch for the 18 month period from July 1, 2000 through December 31, 2001 in connection with a given Plan were estimated using a methodology that assumed that Merrill Lynch's fees for this period were incurred in connection with specific Plans in the same ratio as they were in 2002.  A similar methodology was applied to estimate the amount of fees received by Merrill Lynch in connection with each Plan for the period January 1, 2007 through June 30, 2008, except that data from 2006 was used as the basis for extrapolating each Plan's "share" of fees received by Merrill Lynch (except that in all cases no adjustment was made with respect to calculating 12b-1 fees, as Merrill Lynch ceased its practice of retaining such fees as of December 31, 2006).

identification number is indicated in the separate letter directed to that Plan that accompanies the Notice, so that each Plan can review the calculations applicable to it in the Claim Amount Table.

46.     The figures set forth in the Claim Amount Table were calculated based on information provided by Merrill Lynch and its damages experts. Plaintiffs have been advised by Merrill Lynch that the relevant amounts cannot be calculated with precision due to the absence of certain information for certain portions of the Class Period (and the lack of audited data for any portion of the Class Period), but that they reflect good faith calculations and estimates based on reasonably available information (see footnote 8 above), and that it has no reason to believe that any other methodology for calculating these amounts would be materially more accurate based on available data.

47.     Notwithstanding the Parties' best efforts to insure the substantial correctness and reasonableness of the amounts set forth in the Claim Amount Table, in the event that a Plan believes that it can establish that its calculated Adjusted Claim Amount set forth on the Claim Amount Table is incorrect, it may challenge its Adjusted Clam Amount by submitting evidence (such as account statements provided to it by Merrill Lynch, brokerage statements from the Plan's investment advisors, mutual fund statements, mutual fund disclosure documents reflecting any periods during which the fund was subject to 12b-1 fees, or supporting affidavits) in support of its position that its Adjusted Claim Amount was incorrectly calculated. The submission of such a challenge is referred to as a "Claim Amount Challenge," and a Plan submitting such a challenge is referred to as a "Disputing Plan." Any Claim Amount Challenge must be submitted to the Claims Administrator by an authorized representative(s) of the Disputing Plan along with a properly executed Claim Form, in accordance with the instructions and requirements set forth in the Claim Form, and must be postmarked no later than September 11, 2012. The Claims Administrator and Plaintiffs' Counsel will review any Claim Amount Challenges. If the Claims Administrator, Plaintiffs' Counsel and the Disputing Plan are not able to resolve the Claim Amount Challenge, the Disputing Plan may, if it wishes to pursue the challenge, ask that the dispute be submitted to the Mediator (or a substitute arbitrator appointed by the Court) for binding resolution. A Disputing Plan that chooses to submit a Claim Amount Challenge to the Mediator for binding resolution must bear its own costs and legal fees in connection with its challenge, including one half of any fees charged by the Mediator.

48.     If, as a result of any successful Claim Amount Challenge(s), one or more Plans were to establish that the appropriate Adjusted Claim Amount for their Plan is higher than the amount set forth on the Claim Amount Table, and/or if one or more Plans do not submit a valid Claim Form, the *Pro Rata* Shares of the Net Settlement Fund for all Plans set forth in the Claim Amount Table will be adjusted accordingly, and the Net Settlement Fund will be distributed on the basis of the adjusted *Pro Rata* Shares.

## ADDITIONAL PROVISIONS

49.     Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all Authorized Claimants. No person shall have any claim against Plaintiffs, the Plaintiff Plans, Plaintiffs' Counsel, Defendant, Defendant's Counsel or any of the other Released Defendant Parties, or the Claims Administrator or other agent designated by Plaintiffs' Counsel arising from distributions made substantially in

accordance with the Stipulation, the plan of allocation approved by the Court, or further orders of the Court. Plaintiffs, the Plaintiff Plans, Defendant, Defendant's Counsel and the other Released Defendant Parties shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of any taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

50.     The Plan of Allocation set forth herein is the plan that is being proposed by Plaintiffs and Plaintiffs' Counsel to the Court for approval. The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Class. Any orders regarding a modification of the Plan of Allocation will be posted to the settlement website, www.mlfloridapensionplansettlement.com.

| WHAT RIGHTS WILL OUR PLAN GIVE UP BY REMAINING IN THE CLASS? |
| --- |

51.     If Your Plan remains in the Class, it will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendant and will provide that, upon the Effective Date of the Settlement, Plaintiffs and each of the members of Class (including Your Plan) and their respective named fiduciaries in their capacities as such, on behalf of themselves, their respective heirs, executors, administrators, predecessors, successors, and assigns, shall be deemed by operation of law to have released, waived, discharged, and dismissed each and every Released Plaintiff Claim (as defined in paragraph 52 below) against any of the Released Defendant Parties (as defined in paragraph 53 below) and shall forever be enjoined from prosecuting any and all Released Plaintiff Claims against any of the Released Defendant Parties.

52.     "Released Plaintiff Claims" means any and all claims and causes of action of every nature and description, including Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiffs, the Plaintiff Plans or any other member of the Class (including their respective named fiduciaries in their capacities as such) (a) asserted or could have asserted in the Action that arise out of or relate to the Consulting Services relationship between any Class Member and Merrill Lynch through December 14, 2011, Merrill Lynch's Consulting Services business through December 14, 2011, or Consulting Services provided by the Callaway Team through December 14, 2011, or (b) could have asserted in any forum (whether in court or arbitration) that arise out of or relate to the Consulting Services relationship between any Class Member and Merrill Lynch through December 14, 2011, Merrill Lynch's Consulting Services business through December 14, 2011, or Consulting Services provided by the Callaway Team through December 14, 2011, except for claims relating to the enforcement of the Settlement.

53.     "Released Defendant Parties" means Merrill Lynch, its past and present trustees, officers, directors, employees (including without limitation Michael Callaway, Melissa Callaway and Jeffrey Swanson and all other former employees of the Callaway Team), principals, attorneys, predecessors, successors, assigns, parents, subsidiaries, and divisions.

54.     "Unknown Claims" means any and all Released Plaintiff Claims that Plaintiffs, the Plaintiff Plans, or any of the other Class Members or their respective named fiduciaries in their capacities as such do not know or suspect to exist in his, her, or its favor at the time of the release of such claims, and any Released Defendant Claims that Defendant or any of the other Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her, or it, might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Released Plaintiff Claims and Released Defendant Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs and Defendant shall expressly waive, and each Plaintiff Plan and each other Class Member and its named fiduciaries in their capacities as such, and each other Released Defendant Party, shall be deemed to have waived, all provisions, rights and benefits conferred by any law of any state of the United States, or principle of common law or otherwise, which is similar, comparable or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties acknowledge, and each Plaintiff Plan and each other Class Member and its named fiduciaries in their capacities as such, and each other Released Defendant Party, by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiff Claims and Released Defendant Claims was separately bargained for and was a key element of the Settlement.

55.     The Judgment also will provide that, upon the Effective Date of the Settlement, Defendant and each of the other Released Defendant Parties, on behalf of themselves, their respective heirs, executors, administrators, predecessors, successors, and assigns, shall be deemed by operation of law to have released, waived, discharged, and dismissed any and all claims and causes of action of every nature and description, including Unknown Claims, whether arising under federal, state, common or foreign law, that Merrill Lynch or any other Released Defendant Party could have asserted in the Action or any other forum (whether in court or in arbitration) that arise out of or relate to the Consulting Services relationship between any Class Member and Merrill Lynch through December 14, 2011, Merrill Lynch's Consulting Services business through December 14, 2011, or Consulting Services provided by the Callaway Team through December 14, 2011, as well as all claims relating to the institution, prosecution and/or settlement of the claims asserted against Merrill Lynch in the Action, except for claims relating to the enforcement of the Settlement, and shall forever be enjoined from prosecuting any or all such claims, against Plaintiffs, the Plaintiff Plans and the other members of the Class (who do not exclude themselves from the Class), their past or present trustees, named fiduciaries, directors, officers, employees, principals, attorneys, predecessors, successors, assigns, parents, subsidiaries, and divisions.

> **WHAT PAYMENT ARE THE ATTORNEYS FOR THE CLASS SEEKING?**
> **HOW WILL THE LAWYERS BE PAID?**

56.    Plaintiffs' Counsel have not received any payment to date for their services in pursuing claims against the Defendant on behalf of the Class, nor have Plaintiffs' Counsel been reimbursed for any of their out-of-pocket expenses.  Before final approval of the Settlement, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees from the Settlement Fund in the amount of 25% of the Settlement Fund.  At the same time, Plaintiffs' Counsel also intend to apply for the reimbursement of Litigation Expenses not to exceed $100,000, to be paid from the Settlement Fund.  The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses.

> **HOW CAN OUR PLAN PARTICIPATE IN THE SETTLEMENT?  WHAT DOES OUR**
> **PLAN NEED TO DO?**

57.    *To be eligible for a payment from the proceeds of the Settlement, an authorized representative of Your Plan must execute and complete the Claim Form* and submit it to the Claims Administrator at the address indicated in the Claim Form, *postmarked no later than September 11, 2012*.  A Claim Form is included with this Notice, or you may obtain one from the website maintained by the Claims Administrator for the Settlement, www.mlfloridapensionplansettlement.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator at 1-800-231-1815.  If Your Plan requests exclusion from the Class or does not submit a timely and valid Claim Form, Your Plan will not be eligible to share in the Net Settlement Fund.  **PLEASE NOTE:**  Unlike many other class action settlements, the amount of each Plan's "Adjusted Claim Amount" has already been determined based on information obtained from Defendant's records.  *See* "Proposed Plan of Allocation," above.  *Accordingly, a Plan is neither expected nor required to collect or submit any payment records, account statements or similar evidentiary materials with its Claim Form to establish the amount of its claim under this Settlement*, unless it wishes to file a Claim Amount Challenge (in which case a Plan must follow the additional procedures set forth in paragraph 47 above).

58.    As a condition to being eligible to receive a share of the Net Settlement Fund, Your Plan must acknowledge in its signed Claim Form that, in the event that it (or its named fiduciaries on its behalf) sues any a person or entity other than a Released Defendant Party that provided investment-related or professional or other services to Your Plan during the Class Period (including but not limited to money managers) (a "Third Party") based upon any allegations in connection with the claims or allegations that were asserted in this Action (or that arise out of the Consulting Services relationship between Your Plan and Merrill Lynch during the Class Period), Your Plan must return any distribution it receives from the Net Settlement Fund to Merrill Lynch *if* the assertion of such claim(s) against a Third Party results in a claim being made against Merrill Lynch by such Third Party for contribution or indemnity with respect to such claim(s).  This provision does not apply, however, to any counterclaims asserted by Your Plan (or its named fiduciaries in their capacities as such) in connection with any lawsuit initiated by any Third Party.

59.     As a Class Member, Your Plan is represented by Plaintiffs and Plaintiffs' Counsel, unless Your Plan enters an appearance through counsel of its own choice at its own expense.  Your Plan is not required to retain its own counsel, but if Your Plan chooses to do so, such counsel must file a notice of appearance on behalf of Your Plan and must serve copies of his or her notice of appearance on the attorneys listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

60.     If Your Plan does not wish to remain a Class Member, an authorized representative of Your Plan may exclude the Plan from the Class by following the instructions in the section entitled, "What If Our Plan Does Not Want To Participate In The Settlement? How Does The Plan Exclude Itself?" below.

61.     If Your Plan wishes to object to the Settlement, the proposed Plan of Allocation, or Plaintiffs' Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if Your Plan does not exclude itself from the Class, Your Plan may present its objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

---

### WHAT IF OUR PLAN DOES NOT WANT TO PARTICIPATE IN THE SETTLEMENT? HOW DOES THE PLAN EXCLUDE ITSELF?

---

62.     Your Plan will be bound by all determinations and judgments in this lawsuit, including those concerning the Settlement, whether favorable or unfavorable, unless Your Plan mails or delivers a written Request for Exclusion from the Class, addressed to Merrill Lynch Florida Public Pension Plan Consulting Services Litigation, EXCLUSIONS, c/o GCG, P.O. Box 9349, Dublin, OH 43017-4249.  The exclusion request must be received no later than July 6, 2012. Your Plan will not be able to exclude itself from the Class after that date.  Each Request for Exclusion must (a) state the full legal name of Your Plan and the name(s), address(es) and telephone number(s) of the authorized representative(s) of Your Plan executing the exclusion request on behalf of the Plan; (b) state that Your Plan "requests exclusion from the Class in *Board of Trustees of the City of Lake Worth Employees Retirement System, et al., v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, Case No.: 3:10-cv-845-TJC-MCR"; (c) state the title or position of each person executing the exclusion request on behalf of Your Plan, and include documentation demonstrating that each person executing the exclusion request is authorized to do so on behalf of the Plan and that the signatories executing the request are sufficient to act on behalf of and bind the Plan; and (d) be signed by each authorized representative requesting exclusion on behalf of the Plan.  A Request for Exclusion shall not be effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

63.     If Your Plan asks to be excluded from the Class, it will not be eligible to receive any payment out of the Net Settlement Fund or any other benefit provided for in the Stipulation.

64.     Defendant has the right to terminate the Settlement if valid requests for exclusion are received from putative Class Members in an amount that exceeds an amount agreed to by Plaintiffs and Defendant.

> **WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? DOES A REPRESENTATIVE OF OUR PLAN HAVE TO COME TO THE HEARING? MAY A REPRESENTATIVE OF OUR PLAN SPEAK AT THE HEARING IF THE PLAN DOES NOT LIKE THE SETTLEMENT?**

65. **A representative of Your Plan does _not_ need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Plan representative does not attend the hearing. Your Plan can participate in the Settlement without a Plan representative attending the Settlement Hearing.**

66. The Settlement Hearing will be held on July 27, 2012 at 10:00 a.m. before The Honorable Timothy J. Corrigan, in Courtroom 10D of the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, FL 32202. The Court reserves the right to approve the Settlement and/or the Plan of Allocation at or after the Settlement Hearing without further notice to the members of the Class.

67. Your Plan may object to the proposed Settlement, to the proposed Plan of Allocation, or to Plaintiffs' Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. Objections must be in writing. An authorized representative(s) with authority to bind Your Plan must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Middle District of Florida, at the address set forth below, on or before July 6, 2012. Your Plan's authorized representative must also serve the papers on Plaintiffs' Counsel and Defendant's Counsel at the addresses set forth below so that the papers are received by them on or before July 6, 2012.

| **Clerk's Office** | **Plaintiffs' Counsel** | **Defendant's Counsel** |
|---|---|---|
| United States District Court For The Middle District Of Florida | William C. Fredericks, Esq. Bernstein Litowitz Berger & Grossmann LLP | David A. Coulson, Esq. Greenberg Traurig, P.A. 333 SE 2nd Ave |
| Clerk of the Court | 1285 Avenue of the Americas | Suite 4400 |
| Bryan Simpson United States Courthouse | New York, NY 10019 | Miami, FL 33131 |
| 300 North Hogan Street | | |
| Jacksonville, FL 32202 | | |

68. Any objection to the Settlement must (a) state the full legal name of Your Plan and the name, address and telephone number of each authorized representative of Your Plan submitting the objection; (b) state the title or position of each authorized representative submitting the objection, and include documentation demonstrating that each such person is authorized to do so on behalf of the Plan and that the signatories submitting the objection are sufficient to act on behalf of and bind the Plan; (c) be signed by the authorized representative(s) of the Plan; and (d) contain a statement of the Plan's objection, as well as the specific reasons for the objection, including the legal and evidentiary support Your Plan wishes to bring to the Court's attention. Your Plan may not object to the Settlement, the Plan of Allocation or the

motion for attorneys' fees and reimbursement of expenses if Your Plan submits a request for exclusion from the Class.

69.     Your Plan may file a written objection without having to appear at the Settlement Hearing. Your Plan may not, however, appear at the Settlement Hearing to present its objection unless an authorized representative of Your Plan first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

70.     If Your Plan wishes to be heard orally at the hearing regarding the approval of the Settlement, the Plan of Allocation, or Plaintiffs' Counsel's request for an award of attorneys' fees and reimbursement of expenses, Your Plan must also file a notice of appearance with the Clerk's Office and serve it on Plaintiffs' Counsel and Defendant's Counsel at the addresses set forth above so that it is received on or before July 6, 2012.  Plans which intend to present evidence at the Settlement Hearing must include in their written notice of appearance the identity of any witnesses they may call to testify and include copies of any exhibits they intend to introduce into evidence at the hearing.

71.     Your Plan is not required to hire an attorney to represent Your Plan in making written objections or in appearing at the Settlement Hearing.  However, if Your Plan decides to hire an attorney, it must do so at its own expense, and that attorney must file a notice of appearance with the Court and serve it on Plaintiffs' Counsel and Defendant's Counsel so that the notice is received on or before July 6, 2012.

72.     The Settlement Hearing may be adjourned by the Court without further written notice to the Class.  If a representative of Your Plan intends to attend the Settlement Hearing, you should confirm the date and time with Plaintiffs' Counsel.  Unless the Court orders otherwise, any Plan which does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation, or Plaintiffs' Counsel's request for an award of attorneys' fees and reimbursement of expenses.  Your Plan does not need to appear at the hearing or take any other action to indicate its approval.

---

### CAN A PLAN REPRESENTATIVE SEE THE COURT FILE?  WHOM SHOULD WE CONTACT IF WE HAVE QUESTIONS?

---

73.     This Notice contains only a summary of the terms of the proposed Settlement. For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Middle District of Florida, Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, FL 32202.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.mlfloridapensionplansettlement.com.  All inquiries concerning this Notice or the Claim Form should be directed to:

Merrill Lynch Florida Public Pension Plan
Consulting Services Litigation
c/o GCG
P.O. Box 9349
Dublin, OH 43017-4249
1-800-231-1815

William C. Fredericks, Esq.
Bernstein Litowitz Berger &
Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
1-800-380-8496
blbg@blbglaw.com

**OR**

Robert D. Klausner, Esq.
Adam P. Levinson, Esq.
Klausner, Kaufman, Jensen & Levinson
10059 N.W. 1st Court
Plantation, FL  33324
1-954-916-1202
merrillsuit@gmail.com

Ivelisse Berio LeBeau, Esq.
Sugarman & Susskind, PA
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
1-800-329-2122
info@sugarmansusskind.com

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF
COURT REGARDING THIS NOTICE.**

Dated:  _____, 2012

By Order of the Clerk of Court
United States District Court for the
Middle District of Florida

**EXHIBIT 1**

**CLAIM AMOUNT TABLE**

| PLAN ID NUMBER | UNADJUSTED CLAIM AMOUNT | 12B-1 REFUND AMOUNT | ADJUSTED CLAIM AMOUNT | *PRO RATA* SHARE |
|---|---|---|---|---|
| 1 | $1,636,307 | $0 | $1,636,307 | 11.2405% |
| 2 | 1,157,461 | 25,983 | 1,131,478 | 7.7726% |
| 3 | 1,091,337 | 31,446 | 1,059,891 | 7.2809% |
| 4 | 594,272 | 58,270 | 536,002 | 3.6820% |
| 5 | 488,679 | 0 | 488,679 | 3.3570% |
| 6 | 510,279 | 64,344 | 445,935 | 3.0633% |
| 7 | 429,002 | 0 | 429,002 | 2.9470% |
| 8 | 551,458 | 123,706 | 427,752 | 2.9384% |
| 9 | 471,341 | 53,789 | 417,552 | 2.8684% |
| 10 | 495,488 | 104,388 | 391,100 | 2.6867% |
| 11 | 444,571 | 90,862 | 353,709 | 2.4298% |
| 12 | 361,886 | 13,665 | 348,221 | 2.3921% |
| 13 | 426,964 | 94,683 | 332,281 | 2.2826% |
| 14 | 324,762 | 32,686 | 292,076 | 2.0064% |
| 15 | 280,001 | 14,549 | 265,452 | 1.8235% |
| 16 | 259,737 | 0 | 259,737 | 1.7843% |
| 17 | 392,222 | 134,567 | 257,655 | 1.7699% |
| 18 | 344,362 | 105,144 | 239,218 | 1.6433% |
| 19 | 260,926 | 22,839 | 238,087 | 1.6355% |
| 20 | 295,727 | 80,602 | 215,125 | 1.4778% |
| 21 | 281,126 | 70,576 | 210,550 | 1.4464% |
| 22 | 241,673 | 43,888 | 197,785 | 1.3587% |
| 23 | 235,340 | 43,498 | 191,842 | 1.3178% |
| 24 | 310,477 | 120,443 | 190,034 | 1.3054% |
| 25 | 204,455 | 27,481 | 176,974 | 1.2157% |
| 26 | 205,923 | 31,300 | 174,623 | 1.1996% |
| 27 | 175,389 | 13,853 | 161,536 | 1.1097% |
| 28 | 146,919 | 0 | 146,919 | 1.0093% |
| 29 | 146,621 | 0 | 146,621 | 1.0072% |
| 30 | 135,262 | 0 | 135,262 | 0.9292% |
| 31 | 138,779 | 3,637 | 135,142 | 0.9284% |
| 32 | 123,436 | 0 | 123,436 | 0.8479% |
| 33 | 117,784 | 0 | 117,784 | 0.8091% |
| 34 | 111,891 | 0 | 111,891 | 0.7686% |
| 35 | 109,783 | 0 | 109,783 | 0.7541% |
| 36 | 123,325 | 14,670 | 108,655 | 0.7464% |
| 37 | 105,073 | 0 | 105,073 | 0.7218% |
| 38 | 100,753 | 0 | 100,753 | 0.6921% |
| 39 | 93,392 | 0 | 93,392 | 0.6416% |
| 40 | 117,149 | 24,996 | 92,153 | 0.6330% |
| 41 | 101,354 | 9,466 | 91,888 | 0.6312% |
| 42 | 90,798 | 0 | 90,798 | 0.6237% |
| 43 | 87,021 | 0 | 87,021 | 0.5978% |
| 44 | 85,900 | 0 | 85,900 | 0.5901% |
| 45 | 84,613 | 0 | 84,613 | 0.5812% |
| 46 | 83,964 | 0 | 83,964 | 0.5768% |
| 47 | 80,428 | 0 | 80,428 | 0.5525% |

| PLAN ID NUMBER | UNADJUSTED CLAIM AMOUNT | 12B-1 REFUND AMOUNT | ADJUSTED CLAIM AMOUNT | *PRO RATA SHARE* |
|---|---|---|---|---|
| 48 | 90,633 | 17,195 | 73,438 | 0.5045% |
| 49 | 101,015 | 33,279 | 67,736 | 0.4653% |
| 50 | 65,164 | 0 | 65,164 | 0.4476% |
| 51 | 78,296 | 13,248 | 65,048 | 0.4468% |
| 52 | 64,301 | 0 | 64,301 | 0.4417% |
| 53 | 64,286 | 0 | 64,286 | 0.4416% |
| 54 | 62,039 | 0 | 62,039 | 0.4262% |
| 55 | 70,650 | 8,902 | 61,748 | 0.4242% |
| 56 | 61,122 | 432 | 60,690 | 0.4169% |
| 57 | 59,735 | 0 | 59,735 | 0.4103% |
| 58 | 59,460 | 0 | 59,460 | 0.4085% |
| 59 | 56,866 | 0 | 56,866 | 0.3906% |
| 60 | 54,712 | 0 | 54,712 | 0.3758% |
| 61 | 51,863 | 0 | 51,863 | 0.3563% |
| 62 | 48,323 | 0 | 48,323 | 0.3320% |
| 63 | 48,120 | 0 | 48,120 | 0.3306% |
| 64 | 47,613 | 0 | 47,613 | 0.3271% |
| 65 | 44,484 | 0 | 44,484 | 0.3056% |
| 66 | 45,964 | 6,096 | 39,868 | 0.2739% |
| 67 | 37,726 | 0 | 37,726 | 0.2592% |
| 68 | 37,037 | 0 | 37,037 | 0.2544% |
| 69 | 34,489 | 0 | 34,489 | 0.2369% |
| 70 | 33,932 | 0 | 33,932 | 0.2331% |
| 71 | 31,754 | 0 | 31,754 | 0.2181% |
| 72 | 25,883 | 0 | 25,883 | 0.1778% |
| 73 | 24,273 | 0 | 24,273 | 0.1667% |
| 74 | 25,774 | 3,420 | 22,354 | 0.1536% |
| 75 | 8,024 | 0 | 8,024 | 0.0551% |
| 76 | 6,151 | 0 | 6,151 | 0.0423% |
| **TOTAL** | **$16,095,099** | **$1,537,903** | **$14,557,196** | **100.0000%** |