UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BOARD OF TRUSTEES OF THE CITY OF
LAKE WORTH EMPLOYEES' RETIREMENT
SYSTEM, et. al,

      Plaintiffs,

vs.   Case No. 3:10-cv-845-J-32MCR

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED,

      Defendant.

### DECLARATION OF JUSTIN R. HUGHES IN SUPPORT OF MOTION FOR CLASS DISTRIBUTION ORDER

JUSTIN R. HUGHES declares as follows:

1. I am an Assistant Director of Operations for The Garden City Group, Inc. ("GCG"). By its April 24, 2012 Order Preliminarily Approving Proposed Settlement and Providing for Notice (Dkt. No. 103) (the "Preliminary Approval Order"), the Court authorized Plaintiffs' Counsel to retain GCG as the Claims Administrator in connection with the settlement (the "Settlement") of the above-captioned action (the "Action").[1] I have personal knowledge of the facts stated herein.

### INTRODUCTION

2. As set forth in the Stipulation, Plaintiffs reached a complete Settlement of this Action with Defendant Merrill Lynch for $8,500,000 in cash.[2] The Court approved the Settlement in its July 30, 2012 Judgment Approving Class Action Settlement (Dkt. No. 113) (the

---

[1] All capitalized terms used in this Declaration that are not otherwise defined herein shall have the meanings as ascribed to them in the Stipulation and Agreement of Settlement dated as of March 23, 2012 (Dkt. No. 96-1) (the "Stipulation").

[2] In addition to the $8,500,000 Settlement Amount, Merrill Lynch deposited $1,000 into the Escrow Account to be applied to the costs of providing notice of the Settlement to the Class.

"Judgment"). As set forth in the Stipulation and the Judgment, the Class in this case consists of all Plans for which Merrill Lynch and Merrill Lynch Financial Advisor Michael Callaway or any other member of the Callaway Team provided Consulting Services during the Class Period (July 1, 2000, through and including June 30, 2008), or any portion thereof.[3] The members of the Class are referred to herein as the "Class Members" or the "Class Member Plans."

3. As more fully described in the Affidavit of Jason Zuena filed with the Court on June 22, 2012 (Dkt. No. 108-1), and the Supplemental Affidavit of Jason Zuena filed with the Court on July 20, 2012 (Dkt. No. 111-1), pursuant to the Preliminary Approval Order, GCG mailed each of the 78 Class Member Plans an individualized Notice Packet consisting of (a) the Notice of (I) Pendency and Proposed Settlement of Class Action, (II) Settlement Fairness Hearing, and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Notice"); (b) the Claim Form and Release (the "Claim Form"); and (c) a cover letter setting forth the Plan's unique Identification Number (the "Cover Letter").[4] In response to the mailing of the Notice Packets, each of the 78 Class Member Plans submitted a Claim Form to GCG on or before the September 11, 2012 claim-filing deadline. GCG has completed the processing of the Claim Forms in accordance with the terms of the Stipulation and the Court-approved Plan of Allocation, and hereby submits its administrative determinations with respect to the Claims filed in this Action in preparation for a distribution of the Net Settlement Fund to the Authorized

---

[3] Excluded from the Class are all such Plans that had brought separate arbitration or litigation proceedings against Merrill Lynch or any member of the Callaway Team on or before December 14, 2011, as listed on Schedule 1 to the Stipulation.

[4] Attached as Exhibit 1 to the Notice is a "Claim Amount Table" setting forth each Plan's pre-calculated "Adjusted Claim Amount" under the Plan of Allocation previously approved by the Court that is being used to determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund. To preserve each Plan's confidentiality, each Plan was identified in the Claim Amount Table only by a unique Identification Number. However, each Plan's individualized Claim Form and accompanying Cover Letter separately set forth the Plan's Identification Number, which has allowed each Plan to review its own pre-calculated Adjusted Claim Amount.

Claimants. GCG also presents this Declaration in support of Plaintiffs' Motion for Class Distribution Order.

## DISSEMINATION OF NOTICE PACKETS

**Creation of the Settlement Database**

4. In connection with the mailing of the Notice Packet, GCG received from Plaintiffs' Counsel an Excel file containing for each Class Member Plan the following information: (a) the name and mailing addresses of the Plan's Administrator and Chairperson; (b) the Plan's "Unadjusted Claim Amount," "12B-1 Fee Refund Amount" (if any), "Adjusted Claim Amount," and *Pro Rata* Share of the Net Settlement Fund that appear on the "Claim Amount Table" attached as Exhibit 1 to the Notice; and (c) the unique Identification Number assigned to the Plan for this Settlement. Once this information was received from Plaintiffs' Counsel, GCG reviewed and organized the data and then uploaded it into the database that GCG's programming team had designed specifically for the administration of this Settlement (the "Settlement Database"). The Settlement Database stores, for each Class Member Plan, the Plan's mailing address, mail history, and claim amount data, which allows GCG to quickly and accurately extract Class Member information for mailings, claims review, reporting and outreach to claimants.

**Mailing of the Notice Packets**

5. Using the information provided by Plaintiffs' Counsel that was stored in the Settlement Database, GCG created a Notice Packet for each Class Member Plan. The Notice Packets included a copy of the Notice and individualized versions of the Claim Form and Cover Letter which were pre-populated with information specific to each Plan.[5]

---

[5] The individualized, pre-populated information set forth in each Plan's Claim Form and Cover Letter included the Plan's name, mailing address, Unadjusted Claim Amount, 12B-1 Fee Refund Amount (if any), and Adjusted Claim Amount, as well as the unique Identification Number assigned to the Plan for this Settlement.

3

6. Pursuant to the Preliminary Approval Order, on May 15, 2012, GCG conducted the initial mailing of the Notice Packets. In connection with the initial mailing, GCG disseminated the individualized Notice Packets via certified U.S. Mail to each of the 78 Class Member Plans addressed c/o the Plan's Administrator, with an additional copy mailed to each Plan c/o the Chairperson of the Plan's Board of Trustees.

**Transmittal of the Summary Notice**

7. Pursuant to the Preliminary Approval Order, GCG also caused the Summary Notice of (I) Pendency and Proposed Settlement of Class Action, (II) Settlement Fairness Hearing, and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Summary Notice") to be transmitted over the *PR Newswire*. Among other things, the Summary Notice advised the Class Members of how they could obtain copies of the Notice Packet and of the September 11, 2012 deadline for the submission of Claims.

**Settlement Website and Toll-Free Helpline**

8. GCG established, on or about May 15, 2012, and continues to maintain a website (www.mlfloridapensionplansettlement.com) and a toll-free helpline (1-800-231-1815) dedicated to the Settlement to assist the Class Member Plans. The website and helpline enabled Class Members to obtain information about the Settlement, including the exclusion, objection and claim-filing deadlines, and to access important documents relevant to the Settlement, including the Notice, the Claim Form and the Stipulation. In connection with establishing and maintaining the website and helpline, GCG, among other things, formulated a system to assure that proper responses were provided to all telephone and electronic inquiries. That work included developing and modifying an Interactive Voice Response system, or "IVR"; training telephone agents to respond to inquiries specific to the Settlement; developing a series of common questions and the answers thereto, known as Frequently Asked Questions, or "FAQs," loading

key documents onto the website, and programming the website to permit the viewing and downloading of those documents.

## PROCEDURES FOLLOWED IN PROCESSING CLAIMS

9. Pursuant to the Preliminary Approval Order, Class Member Plans seeking to participate in the Settlement and be eligible to receive a distribution from the Net Settlement Fund were instructed to complete and submit their Claim Form to the Settlement PO Box no later than September 11, 2012.  GCG sorted incoming mail received by the PO Box into Claim Forms and other correspondence.  Correspondence was reviewed and, where necessary, appropriate responses were promptly provided to the senders.  Claim Forms were opened and prepared for scanning into the database. This process included unfolding documents, removing staples, sorting documents, and copying non-conforming sized documents.  Once prepared, Claim Forms were scanned into a database together with all submitted documentation.  Once scanned, the information from each Claim Form, including the name, address, telephone number, email address, and the taxpayer identification number of the Class Member Plan, was entered into the Settlement Database.  In addition, the documentation provided by the Plan representative(s) evidencing his or her authority to execute the Claim Form on behalf of the Plan was reviewed by GCG.

10. Unlike many other class action settlements, the amount of each Plan's Adjusted Claim Amount used to determine its payment amount under the Plan of Allocation was already determined based on information obtained from Merrill Lynch's records.  Accordingly, the Class Member Plans were not required to collect or submit any payment records, account statements or other evidentiary materials with their Claim Forms to demonstrate their eligibility to share in the settlement proceeds.  However, if a Class Member wished to challenge its pre-calculated Adjusted Claim Amount, it was required to submit documentation in support of its "Claim Amount Challenge" in accordance with the procedures set forth in Part IV of the Claim Form.

5

Not a single Class Member Plan has submitted a Claim Amount Challenge in connection with their Claim.

## QUALITY ASSURANCE

11.     An integral part of every GCG settlement administration is our "Quality Assurance" review. The Quality Assurance team tested and reviewed the programs and database infrastructure designed for this administration. For example, the Quality Assurance team tested the entry screens used for entering and storing data for each of the 78 Claims received by GCG. Also, screens for Class Member names, mailing addresses, phone numbers, email addresses, and taxpayer ID numbers were all reviewed.

12.     The Quality Assurance team also tested the program that GCG will use to calculate the Authorized Claimant's payment amounts (by determining the *pro rata* factor for the Settlement, and applying it against the Authorized Claimants' Adjusted Claim Amounts).

13.     At the close of the administration, once all of the Claims were received and processed, GCG's Quality Assurance team performed a final project review to ensure the accuracy and completeness of all processing, before GCG prepared its final report for Plaintiffs' Counsel.

## DISPOSITION OF CLAIMS

14.     GCG has reviewed each of the Claim Forms submitted in this matter. Based on its review of the Claim Forms, GCG has determined that each of the 78 Class Member Plans has filed a valid and properly executed Claim Form on or before the September 11, 2012 claim-filing deadline, and not a single Class Member Plan has submitted a Claim Amount Challenge contesting its Adjusted Claim Amount. Attached hereto as Exhibit A is an "Accepted Claim List" setting forth the Plan Identification Number for each of the 78 Class Member Plans that have filed timely, valid Claims, together with their corresponding Adjusted Claim Amount and *Pro Rata* Percentage Share of the Net Settlement Fund. GCG respectfully requests that the Court

6

approve GCG's administrative determinations accepting each of the 78 Claims set forth on Exhibit A (the "Authorized Claimants").

## GCG'S FEES AND EXPENSES

15.  GCG was engaged by Plaintiffs' Counsel, and agreed to serve as the Claims Administrator, in exchange for payment of its fees and expenses. Plaintiffs' Counsel authorized all of the administration work performed herein, and received regular status reports. Attached hereto as Exhibit B is a copy of GCG's invoice for this administration. GCG's invoice is separated into two sections: a "fee" section, which includes GCG's profit, if any, and an "expense" section, which lists those items for which GCG is only asking to recoup its costs. The invoice attached hereto as Exhibit B reflects that GCG has billed a total of $35,944.25 for its work performed through December 15, 2012 and GCG estimates that its fees and expenses to conduct the distribution of the settlement proceeds will be $4,716.60, for total fees and expenses of $40,660.85. To date, GCG has not received payment for any of its fees and expenses; accordingly, there is a balance due to GCG of $40,660.85.

## DISTRIBUTION OF THE NET SETTLEMENT FUND

16.  Pursuant to the terms of the Court-approved Plan of Allocation, each Class Member Plan shall be allocated a *pro rata* share of the Net Settlement Fund based its Adjusted Claim Amount as compared to the total Adjusted Claim Amounts of all Authorized Claimants. Accordingly, should the Court approve GCG's administrative determinations accepting the Claims set forth on Exhibit A hereto, consistent with Plan of Allocation previously approved by the Court, GCG respectfully requests that the Court enter an order directing distribution of 100% of the available balance of the Net Settlement Fund held in the Escrow Account (after deducting all payments previously allowed and requested herein and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns and any escrow fees) to the

Authorized Claimants based on their Adjusted Claim Amounts in comparison to the total Adjusted Claim Amount of all Authorized Claimants (the "Distribution").

17. In addition, in order to encourage the Authorized Claimants to cash their Distribution checks promptly, and to avoid or reduce future expenses relating to unpaid Distribution checks, GCG respectfully requests that the Court order that all Distribution checks bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]."

## DESTRUCTION OF CLAIM FORMS

18. Unless otherwise ordered by the Court, one year after the Distribution, GCG may destroy the paper copies of the Claims Forms and all supporting documentation and, two years after the Distribution, GCG may destroy electronic copies of the Claim Form records.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed in Lake Success, New York on December 28, 2012.

_____
JUSTIN R. HUGHES

# EXHIBIT A



# MERRILL LYNCH FLORIDA PUBLIC PENSION PLAN
# CONSULTING SERVICES LITIGATION
# EXHIBIT A
# ACCEPTED CLAIM LIST

| PLAN ID NUMBER | ADJUSTED CLAIM AMOUNT | *PRO RATA* PERCENTAGE SHARE |
|---|---|---|
| 1 | $ 1,433,790.00 | 9.8267% |
| 2 | $ 1,131,478.00 | 7.7547% |
| 3 | $ 1,059,891.00 | 7.2641% |
| 4 | $ 635,666.00 | 4.3566% |
| 5 | $ 536,002.00 | 3.6736% |
| 6 | $ 488,679.00 | 3.3492% |
| 7 | $ 445,935.00 | 3.0563% |
| 8 | $ 427,752.00 | 2.9317% |
| 9 | $ 417,552.00 | 2.8618% |
| 10 | $ 391,100.00 | 2.6805% |
| 11 | $ 353,709.00 | 2.4242% |
| 12 | $ 348,221.00 | 2.3866% |
| 13 | $ 332,281.00 | 2.2773% |
| 14 | $ 292,076.00 | 2.0018% |
| 15 | $ 265,452.00 | 1.8193% |
| 16 | $ 259,737.00 | 1.7801% |
| 17 | $ 257,655.00 | 1.7659% |
| 18 | $ 239,218.00 | 1.6395% |
| 19 | $ 238,087.00 | 1.6318% |
| 20 | $ 215,125.00 | 1.4744% |
| 21 | $ 210,550.00 | 1.4430% |
| 22 | $ 197,785.00 | 1.3555% |
| 23 | $ 191,842.00 | 1.3148% |
| 24 | $ 190,034.00 | 1.3024% |
| 25 | $ 176,974.00 | 1.2129% |
| 26 | $ 174,623.00 | 1.1968% |
| 27 | $ 161,536.00 | 1.1071% |
| 28 | $ 146,919.00 | 1.0069% |
| 29 | $ 146,621.00 | 1.0049% |
| 30 | $ 135,262.00 | 0.9270% |
| 31 | $ 135,142.00 | 0.9262% |
| 32 | $ 123,436.00 | 0.8460% |
| 33 | $ 117,784.00 | 0.8072% |
| 34 | $ 111,891.00 | 0.7669% |
| 35 | $ 108,655.00 | 0.7447% |
| 36 | $ 105,073.00 | 0.7201% |

| | | |
|---|---|---|
| 37 | $ 100,753.00 | 0.6905% |
| 38 | $ 93,392.00 | 0.6401% |
| 39 | $ 92,153.00 | 0.6316% |
| 40 | $ 91,888.00 | 0.6298% |
| 41 | $ 90,798.00 | 0.6223% |
| 42 | $ 87,021.00 | 0.5964% |
| 43 | $ 85,900.00 | 0.5887% |
| 44 | $ 84,613.00 | 0.5799% |
| 45 | $ 83,964.00 | 0.5755% |
| 46 | $ 80,428.00 | 0.5512% |
| 47 | $ 74,471.00 | 0.5104% |
| 48 | $ 73,438.00 | 0.5033% |
| 49 | $ 67,736.00 | 0.4642% |
| 50 | $ 65,164.00 | 0.4466% |
| 51 | $ 65,048.00 | 0.4458% |
| 52 | $ 64,301.00 | 0.4407% |
| 53 | $ 64,286.00 | 0.4406% |
| 54 | $ 62,039.00 | 0.4252% |
| 55 | $ 61,748.00 | 0.4232% |
| 56 | $ 60,690.00 | 0.4159% |
| 57 | $ 59,735.00 | 0.4094% |
| 58 | $ 59,460.00 | 0.4075% |
| 59 | $ 56,866.00 | 0.3897% |
| 60 | $ 54,712.00 | 0.3750% |
| 61 | $ 51,863.00 | 0.3555% |
| 62 | $ 48,323.00 | 0.3312% |
| 63 | $ 48,120.00 | 0.3298% |
| 64 | $ 47,613.00 | 0.3263% |
| 65 | $ 44,484.00 | 0.3049% |
| 66 | $ 43,113.00 | 0.2955% |
| 67 | $ 39,868.00 | 0.2733% |
| 68 | $ 37,726.00 | 0.2586% |
| 69 | $ 37,037.00 | 0.2538% |
| 70 | $ 34,489.00 | 0.2364% |
| 71 | $ 33,932.00 | 0.2326% |
| 72 | $ 31,754.00 | 0.2176% |
| 73 | $ 25,883.00 | 0.1774% |
| 74 | $ 24,273.00 | 0.1664% |
| 75 | $ 22,354.00 | 0.1532% |
| 76 | $ 16,997.00 | 0.1165% |
| 77 | $ 10,790.00 | 0.0740% |
| 78 | $ 8,024.00 | 0.0550% |
| **TOTAL** | **$ 14,590,780.00** | **100.00%** |

# EXHIBIT B

# INVOICE



| INVOICE DATE | INVOICE NUMBER |
|---|---|
| 12/21/2012 | 13897 |
| PERIOD START | THROUGH DATE |
| 03/26/2012 | 12/15/2012 |

John J. Mills, Esq.
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York NY 10019

| **Project Name: Merrill Lynch Florida Public Pension Plan Consulting Services Litigation** | | | |
|---|---|---|---|
| Description | Quantity | Rate | Amount |
| **Fees** | | | |
| **Notice Dissemination**<br>Printing of Notice Packet | 13.4 Hrs. | | $1,103.00 |
| Summary Notice Publication (GCG's commission is included in these fees)<br>    *PR Newswire* | | | $2,346.00 |
| **Imaging, Document Management & Storage**<br>Mailroom Services | 27.3 Hrs. | | $1,555.50 |
| **Claim Processing**<br>Process Claims | 5.8 Hrs. | | $493.00 |
| **Contact Services**<br>Handling of class member communications | 14.4 Hrs. | | $1,366.50 |
| **Website Services**<br>Standard set-up and design | 10.9 Hrs. | | $1,362.50 |
| **Project Management** | 173.6 Hrs. | | $19,475.00 |
| **Systems Support** | 12.2 Hrs. | | $1,885.00 |
| **Quality Assurance** | 38.3 Hrs. | | $5,070.00 |
| **Total Fees** | | | **$34,656.50** |
| **Project Expense Total (See Exhibit A)** | | | $1,287.75 |

# INVOICE



| Project Name: Merrill Lynch Florida Public Pension Plan Consulting Services Litigation | | | |
|---|---|---|---|
| Description | Quantity | Rate | Amount |
| **Fees Continued** | | | |
| **Subtotal** | | | **$35,944.25** |
| **Estimate for the Distribution (See Exhibit B)** | | | **$4,716.60** |
| **Grand Total** | | | **$40,660.85** |

# EXHIBIT A



| **Project Name: Merrill Lynch Florida Public Pension Plan Consulting Services Litigation** | |
|---|---|
| Description | Amount |
| **Project Expenses** | |
| For the period: March 26, 2012 through December 15, 2012 | |
| Postage | $1,025.18 |
| FedEx, Messenger & Shipping | $18.89 |
| PACER Charges | $9.70 |
| Copy Charges | $3.80 |
| Telephone Charges | $5.13 |
| Overtime Expenses | $31.00 |
| Domain Registration | $194.05 |
| **Total** | **$1,287.75** |

**Please Remit To :**

The Garden City Group, Inc.
1985 Marcus Avenue, Suite 200
Lake Success, NY 11042

-Or-

The Garden City Group, Inc.
Operating A/C
Signature Bank
1225 Franklin Avenue
Garden City, NY 11530

ABA # - 026013576
A/C # - 1501168781
Tax ID # - 11-3235454
Swift Code - SIGNUS33



# EXHIBIT B

**MERRILL LYNCH FLORIDA PUBLIC PENSION PLAN CONSULTING SERVICES LITIGATION**
**ESTIMATE OF FEES AND EXPENSES FOR THE DISTRIBUTION**
**AS OF DECEMBER 16, 2012**

I. **Check Distribution- Fees**

| | |
|---|---:|
| Print 78 Checks | $165.00 |
| Project Management | $1,110.00 |
| Quality Assurance | $925.00 |
| Systems Support | $370.00 |
| Mailroom Services | $275.00 |
| Banking Services | $375.00 |
| *Subtotal of Check Distribution Fees* | $3,220.00 |

**Check Distribution- Expenses**

| | |
|---|---:|
| Postage | $35.10 |
| *Subtotal of Check Distribution Expenses* | $35.10 |
| *Subtotal of Check Distribution Fees & Expenses* | **$3,255.10** |

II. **Post-Distribution Work- Fees (Assumes 3 months)**

| | |
|---|---:|
| Project Management | $370.00 |
| Quality Assurance | $185.00 |
| Systems Support | $185.00 |
| Banking Services | $150.00 |
| Mailroom | $110.00 |
| *Subtotal of Post-Distribution Work Fees* | $1,000.00 |

**Post-Distribution Work- Expenses**

| | |
|---|---:|
| FedEx, Copies, Line Charges | $100.00 |
| *Subtotal of Post-Distribution Work Expenses* | $100.00 |
| *Subtotal of Post-Distribution Work Fees & Expenses* | **$1,100.00** |

III. **Ancillary Services- Fees**

| | |
|---|---:|
| OFAC Search Charge | $350.00 |
| *Subtotal of Ancillary Fees* | $350.00 |

**Ancillary Services- Expenses**

| | |
|---|---:|
| Disposal of files | $11.50 |
| *Subtotal of Ancillary Expenses* | $11.50 |
| *Subtotal of Ancillary Fees & Expenses* | **$361.50** |

**GRAND TOTAL FEES AND EXPENSES:**   **$4,716.60**